# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| LIFE TECHNOLOGIES CORPORATION, and APPLIED BIOSYSTEMS, LLC, | § § § § | |
| *Plaintiffs,* | § § | CIVIL ACTION NO. 2:09-cv-00283 |
| v. | § § § | |
| BIOSEARCH TECHNOLOGIES, INC., BIO-SYNTHESIS, INC., and EUROFINS MWG OPERON INC., | § § § § § | |
| *Defendants.* | § § | |

**PLAINTIFFS LIFE TECHNOLOGIES CORPORATION AND APPLIED BIOSYSTEMS, LLC'S SUR-REPLY TO THE MOTION TO RECONSIDER THE SEPTEMBER 22, 2011 CLAIM CONSTRUCTION ORDER**

**I.     INTRODUCTION**

Defendants' Reply fails to respond to the majority of Plaintiffs' arguments other than characterizing them as "clever legal twists."[1]  But Defendants misconstrue the law and the facts to have this Court Reject Magistrate Judge Everingham's proper constructions of the claim terms at issue.  The Court should affirm its September 22, 2011 Order.[2]

**II.     "QUENCHER MOLECULE"**

Defendants do not contest that the patentees expressly defined "quencher molecule," that the specification and prosecution history both recognize that not all quenchers are fluorescent, or that the prosecution history supports inclusion of non-fluorescent quenchers.  *Compare* Opp. at 1-6 *with* Reply 4-5.  Defendants do not dispute that claims may not be re-written to preserve validity, that Defendants failed to cite a single case in which a court rejected an unambiguous construction to avoid a "nonsensical result," or that Defendants misstated the law when they argued that a claim term cannot have different meanings in different claims.  *Id.*

Instead, Defendants' only argue that "Plaintiffs are now seeking to change their previous position that in fact some claims would be rendered invalid by an interpretation including non-fluorescent quenchers."  Reply at 5.  But Plaintiffs have never argued that the Court's construction would render claims invalid.[3]  Plaintiffs consistently have argued that the construction of this term is unambiguous and must be adopted regardless of the impact on

---

[1]  In this brief, "Defendants" refers to Biosearch Technologies, Inc. and Eurofins MWG Operon Inc. and "Plaintiffs" refers to Life Technologies Corporation and Applied Biosystems, LLC.

[2]  In this brief, "Order" refers to the Sept. 22, 2011 Mem. Op. and Order, Dkt. No. 212; "Motion" refers to Defs.' Oct. 6, 2011 Mot. to Recons., Dkt. No. 218; "Opp." refers to Pls.' Oct. 24, 2011 Opp'n to Mot. to Recons., Dkt. No. 221; and "Reply" refers to Defs.' Nov. 3, 2011 Reply in Supp. of Mot. to Recons., Dkt. No. 222.

[3]  Plaintiffs' position on validity has not changed, but it has responded to the Court's request that validity be discussed during claim construction.  Plaintiffs had initially argued that whether or not a construction had nonsensical results should be considered after claim construction because "[t]he time for Defendants to challenge validity is later."  Dkt. No. 201 at 2.  However, the Court directed the Plaintiffs to "[t]ell me why [any challenged claims] would make sense" at the claim construction hearing.  Dkt. No. 221-1 at 9:13-14.

validity.  *See* Dkt. No. 201 at 2; Dkt. No. 221-1 at 57:18-23; Opp. at 5.  Defendants' Reply cites a case that states that claims should be constructed to sustain validity "if possible," without addressing that it is not possible to construe the term "quencher molecule" to exclude non-fluorescent quenchers here.  *Compare* Reply at 5 *with* Dkt. No. 201 at 2 *and* Opp. at 2-3.

Plaintiffs' position on claim validity has not changed.  *See* Dkt. No. 221-1 at 9:23-10:5, 57:2-5; Opp. at 4.  Defendants assert that the Plaintiffs previously "admitted" that the Court's construction "renders some of the claims invalid."  Reply at 4-5.  Yet the quoted argument does not take the position that claims ***would*** be invalid, only that:

> [t]he fact that some of the claims use a ratio that has the emission of the quencher on the bottom, yes, it means that those particular claims cannot include a quencher where the emission is 0. . . .  The patentees knew how to use the words they wanted to use, they used the words they wanted to [use], and ultimately, ***if the Court disagrees, perhaps*** some of the claims are invalid, but given how clear the intrinsic record is, the Court should not try to save the patentees from themselves."[4]

Dkt. No. 221-1 at 57: 2-5, 15-22.  Stating that ***if*** a Court rejects Plaintiffs' validity position some of the claims may ***perhaps*** be invalid is not, as defendants characterize, stating that "in fact some claims would be rendered invalid."  Reply at 5.

Defendants incorrectly assert that Plaintiffs seek to "constru[e] the term 'quencher' differently for different claims."  *Id.*  Plaintiffs' position remains that the use of a particular ratio in one claim modifies the word "quencher" for that particular claim, but does not alter the construction of the term "quencher" itself.  *See* Dkt. No. 221-1 at 9:23-10:5, 57:2-5; Opp. at 4.  This is no different from the Federal Circuit's holding that the use of the word "steel" to modify the word "baffles" in one claim does not mean the word "baffles" should be limited to objects made of steel in other claims that lack the word "steel."  *See Phillips v. AWH Corp.*, 415 F.3d

---

[4] All emphasis in quotations is added unless otherwise noted.

1303, 1314 (Fed. Cir. 2005).

Defendants have not disputed that the Court's construction is unambiguous or that Courts may not re-write unambiguous claims. The Court should affirm this construction.

### III. "A HAIRPIN STRUCTURE"

Defendants' Reply does not dispute that the Court's construction of "a hairpin structure" is based on the patentees' express definition, is supported by both the specification and the references cited in the specification, or that Defendants' construction would exclude a preferred embodiment from the claims. *Compare* Opp. at 6-10 *with* Reply at 4.

Instead, Defendants cite one statement in the prosecution history as support for their construction. But this statement actually **confirms** that "[t]he Specification thus clearly defines what is intended by the term 'hairpin structure,'" and only states that the "definition for the term 'hairpin structure' *is consistent with* other art references" that discuss the ordinary meaning of the term hairpin. Reply at 4. Something can be "consistent with" a reference without being identical to that reference. And the patentees' definition is consistent with the plain and ordinary meaning of hairpin used in the reference because "[t]he defined 'hairpin structure' has all the features of the plain and ordinary meaning of the term, as well as an additional feature (bringing the reporter and quencher into proximity) used in the dual-labeled probe prior art," an argument that Defendants have chosen to ignore. *Compare* Opp. at 10 *with* Reply at 4.

Defendants' reliance on this statement in the prosecution history is an insufficient challenge to the Court's proper construction. The Court should affirm its construction.

### IV. "MONITORING THE FLUORESCENCE"

Defendants do not contest that "[t]he intrinsic record shows that one of skill in the art would have understood 'monitoring the fluorescence,' to have its ordinary meaning, that is, to refer to monitoring fluorescence *during* reactions." *Compare* Opp. at 12-13 (emphasis in

3

original) *with* Reply at 1-3. Defendants do not contest that "based on the [1992 and 1993] Higuchi references, a person of ordinary skill in the art would have understood the term 'monitoring the fluorescence" to mean monitoring product generation ***during*** the reaction." *Compare* Opp. at 13-14 (emphasis in original) *with* Reply at 1-3.

As shown by Higuchi, one of skill in the art at the time of the invention would have understood "monitoring the fluorescence" to include monitoring ***during*** a reaction. While Defendants continue to discuss *PC Connector Solutions LLC v. SmartDisk Corp.*, 406 F.3d 1359 (Fed. Cir. 2005), they have dropped their earlier argument that *PC Connector* requires the Court to consider whether "later-developed ***technology*** . . . was not understood to be encompassed" by a claim term. *Compare* Motion at 11 *with* Reply at 3. Now, they agree with Plaintiffs that the proper standard is that "***meaning*** must be interpreted as of its effective filing date." *Compare* Reply at 3 *with* Opp. at 12. Thus, the issue is whether the word "monitoring" would be understood to mean during a reaction or only after the reaction, not what technology would have been used. Defendants' final arguments are both flawed: (1) an irrelevant assertion that the court thought "RT-PCR" meant something other than what it meant, and (2) misreading of a declaration not presented until Defendants' Reply on Reconsideration. Yet both of these arguments are flawed.

### A. How the Court Interpreted "RT-PCR" is Irrelevant

Defendants' incorrectly argue that the Court erred in consideration of Dr. Livak's article. Reply at 1-2. But Defendants are only challenging the Court's initial general description of the article, not the later specific reason the Court gave for rejecting Defendants' argument. *Compare* Motion at 10-11 *and* Reply at 1-2 *with* Order at 17-18. Specifically, Defendants do not contest the Court's conclusion that Dr. Livak's article discloses "another method by which real-time PCR can be performed," that the article the Court refers to is the 1992 Higuchi paper, or that the

4

1992 Higuchi paper discloses a method of real-time PCR. *Id.* Defendants have thus not challenged the facts upon which the Court explicitly based its ultimate conclusion about Dr. Livak's article. The Court's construction should not be rejected because of what the Court may have been thinking when it wrote "RT-PCR," or when it generally stated that the article "describes different methods that measure product during PCR reactions."

### B. Defendants' New Argument Mischaracterizes Evidence

Defendants improperly raise a new argument on reply. But "[a]rguments raised for the first time in a reply brief are forfeited." *Conway v. United States*, 647 F.3d 228, 237 n.8 (5th Cir.) (citation omitted). This new argument incorrectly implies that a declaration contradicts the Court's construction.[5] *See* Reply at 1, 2-3. But the declaration's discussion of monitoring "when the probe is hybridized to the target," is entirely consistent with monitoring ***during*** a PCR reaction. During a single PCR (or "amplification") reaction, probes hybridize to targets during each of the many cycles of the PCR reaction. *See generally* Opp. at 11; Dkt. No. 184 at 301-02. Similarly, the "higher temperatures used during PCR" that Defendants discuss are also only used periodically as part of the individual cycles during a PCR reaction. *Id.* Indeed, the very next sentence of the declaration states that the "Livak claims recite a method ***for performing and simultaneously monitoring*** the occurrence of . . . amplification." Dkt. No. 223-1 at 11. It thus explicitly recognizes that monitoring is done simultaneously with the progression of the PCR reaction. The Court should reject this new argument and affirm its construction of this term.

### V. CONCLUSION

Life Tech respectfully requests that the Court affirm Magistrate Judge Everingham's constructions of the three terms at issue.

---

[5] To the extent Defendants are raising this argument as the type of "time-dependence" discussed in Defendants' cited cases, such an argument would be incorrect. *Compare* Opp. at 12 *with* Reply at 2-3.

Dated: November 14, 2011				Respectfully submitted,


					_____*/s/  Cora Louise Schmid*_____
					Kenneth E. Keller (admitted *pro hac vice*)
					Michael D Lisi (admitted *pro hac vice*)
					KRIEG KELLER SLOAN REILLEY & ROMAN
					555 Montgomery Street
					17th Floor
					San Francisco, CA 94111
					Tel: (415) 249-8330
					Fax: (415) 249-8333
					Email: kkeller@kksrr.com

					David K. Wooten (Texas Bar 24033477)
					Leisa Talbert Peschel (Texas Bar 24060414)
					VINSON & ELKINS, LLP
					1001 Fannin Street, Suite 2500
					Houston, TX  77002-6760
					Tel:  (713) 758-2095
					Fax:  (713) 615-5936
					dwooten@velaw.com
					lpeschel@velaw.com

					Tracey B. Davies (Texas Bar 24001858)
					Stephen M. Hash (Texas Bar 24012800)
					VINSON & ELKINS, LLP
					The Terrace 7
					2801 Via Fortuna, Suite 100
					Austin, TX 78746-7568
					Tel:  (512) 542-8400
					Fax:  (512) 542-8612
					tdavies@velaw.com
					shash@velaw.com

					Margaret J. Sampson (Texas Bar 24027953)
					VINSON & ELKINS, LLP
					525 University Avenue
					Suite 410
					Palo Alto, CA 94301-1918
					Tel: (650) 617-8400
					Fax: (650) 618-1970
					msampson@velaw.com

        Collin Maloney (Texas Bar 00794219)
        Otis Carroll (Texas Bar 03895700)
        IRELAND, CARROLL & KELLEY, PC
        6101 S. Broadway, Suite 500
        Tyler, TX  75703
        Tel:  (903) 561-1600
        Fax:  (903) 581-1071
        Fedserv@icklaw.com

        Cora L. Schmid (California Bar No. 237267)
        HELIXIP LLP
        400 Seaport Court, Suite 105
        Redwood City, CA  94063-2799
        Tel:  (650) 241-0194
        Fax:  (650) 362-1802
        cschmid@helixip.com

        *Attorneys for Plaintiffs Life Technologies*
        *Corporation and Applied Biosystems, LLC*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 14th day of November, 2011.

*/s/ Cora Louise Schmid*