Edward W. Goldstein (*Pro Hac Vice Admission Pending*)
egoldstein@gliplaw.com
Alisa Anne Lipski (State Bar No. 278710)
alipski@gliplaw.com
GOLDSTEIN & LIPSKI LLP
1177 West Loop South, Suite 400
Houston, TX 77027
Telephone:      (713) 877-1515
Facsimile:      (713) 877-1145

Cora L. Schmid (State Bar No. 237267)
cschmid@helixip.com
HELIXIP LLP
400 Seaport Court, Suite 105
Redwood City, CA 94063-2799
Telephone:      (650) 241-0194
Facsimile:      (650) 362-1802

Katherine Nolan-Stevaux (State Bar No. 244950)
katherine.nolan-stevaux@lifetech.com
LIFE TECHNOLOGIES CORP.
850 Lincoln Centre Drive
Foster City, CA 94404
Telephone:      (650) 554-3584
Facsimile:      (650) 554-2885

*Attorneys for Plaintiffs Life Technologies Corp.
and Applied Biosystems, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LIFE TECHNOLOGIES CORPORATION, and APPLIED BIOSYSTEMS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>BIOSEARCH TECHNOLOGIES, INC., BIO-SYNTHESIS, INC., and EUROFINS MWG OPERON INC.,<br><br>Defendants. | Case No. 3:12-cv-00852-JSW<br><br>**PLAINTIFFS' MOTION FOR SANCTIONS FOR VIOLATION OF PROTECTIVE ORDER**<br><br>Date:      **April 27, 2012**<br>Time:      **9:00 a.m.**<br>Place:      **Courtroom 11, 19th Floor**<br>Judge:      **Hon. Jeffrey S. White** |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   FACTS ................................................................................................................. 2

    A.   Unauthorized Disclosures of Life Tech Confidential Notebooks. .......................... 2

    B.   Morgan Lewis's Secret Response to the Unauthorized Disclosures.. ...................... 3

    C.   Negotiation and Entry of the Case-Specific Protective Order. ............................... 4

    D.   Morgan Lewis's Response to Life Tech's Discovery of the Disclosure. ................. 4

III.  ARGUMENT ....................................................................................................... 5

    A.   Morgan Lewis and Biosearch Have Violated Court Orders. .................................. 6

        1.   Morgan Lewis and Biosearch Admit Violating P.R. 2-2. ........................... 6

        2.   Morgan Lewis Improperly Resorted to Incomplete "Self-Help". ................ 6

        3.   Morgan Lewis Violated the April 6, 2011 Protective Order.. ..................... 7

    B.   The Court Should Sanction Morgan Lewis and Biosearch for their Violations. ........................................................................................................... 9

        1.   Legal Standards for Sanctions. ...................................................... 9

        2.   Mr. Mann and Mr. Johnson Should Be Subject to the Stipulated Protective Order's Prosecution Bar. ........................................... 11

        3.   Mr. Mann Should Be Precluded From Further Access to Life Tech's Designated Information. ................................................. 12

        4.   Mr. Johnson Should Also Be Precluded From Further Access to Life Tech's Designated Information. ......................................... 12

        5.   Drs. Larry and Laura Parkhurst Should Be Precluded From Testifying in This Case. .................................................................. 14

        6.   Morgan Lewis and Biosearch Should Pay Life Tech's Costs of Enforcing P.R. 2-2 and the Stipulated Protective Order. .......................... 15

IV.   CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

CASES                                                                                               PAGE

*Allergan, Inc., v. Hi-Tech Pharm. Co., Inc.,*
   No. 2:09-cv-97, No. 2:09-cv-182, No. 2:09-cv-348, No. 2:10-cv-200,
   2011 U.S. Dist. LEXIS 69429 (E.D. Tex. June 28, 2011) ............................................. 5, 10, 15

*Biocore Med. Tech., Inc. v. Khosrowshahi,*
   No. 98-2031-KHV, No. 98-2175-KHV, 1998
   U.S. Dist. LEXIS 20512 (D. Kan. Nov. 6, 1998)..................................................................... 10

*Brocade Communs. Sys. v. A10 Networks, Inc.,*
   10-CV-03428-LHK, 2011 U.S. Dist. LEXIS 99932 (N.D. Cal. Sept. 6, 2011) ......... 10, 14, 15

*Burkette v. Waring,*
   No. 10-10230, 2010 U.S. Dist. LEXIS 88758 (E.D. Mich. Aug. 27, 2010) ......................... 11

*Chambers v. Nasco, Inc.,* 501 U.S. 32 (1991)..................................................................................... 9

*Chilcutt v. United States,*
   4 F.3d 1313 (5th Cir. 1993)..................................................................................................... 9

*Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.,*
   305 F.3d 1303 (Fed. Cir. 2002).............................................................................................. 10

*Facebook, Inc. v. Pac. Northwest Software, Inc.,*
   640 F.3d 1034 (9th Cir.)........................................................................................................... 6

*Henderson v. City & County of San Francisco,*
   No C-05-234 VRW, 2006 U.S. Dist. LEXIS 87262 (N.D. Cal. Dec. 1 2006)........................ 15

*Ibarra v. Sunset Scavenger Co.,*
   No. C 01 2875 SI, 2003 U.S. Dist. LEXIS 8711 (N.D. Cal. May 20, 2003) .......................... 11

*In re Bradley,*
   588 F.3d 254 (5th Cir. 2009)..................................................................................................... 6

*LML Patent Corp. v JPMorgan Chase & Co.,*
   No. 2:08-CV-448, 2011 U.S. Dist. LEXIS 128724 (E.D. Tex. Aug. 11, 2011) ....................... 9

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.,*
   283 F.3d 282 (5th Cir. 2002)................................................................................................ 6, 15

*Paulsen v. CNF Inc.,* 559 F.3d 1061 (9th Cir. 2009) ......................................................................... 5

*Pressey v. Patterson,* 898 F.2d 1018 (5th Cir. 1990) .......................................................................... 9

*Roadway Express, Inc. v. Piper,* 447 U.S. 752 (1980)....................................................................... 5

1

# TABLE OF AUTHORITIES (CONT.)

2

**CASES**                                                                        **PAGE**

*Trenado v. Cooper Tire & Rubber Co.*, 274 F.R.D. 598 (S.D. Tex. 2011) ............................... 9, 15

*Visto Corp. v. Seven Networks, Inc.*,
    No. 2:03-CV-333-TJW, 2006 U.S. Dist. LEXIS 91453 (E.D. Tex. Dec. 19, 2006)........ *passim*

*Versata Software, Inc., v. SAP Am., Inc.*,
    No. 2:07-CV-153 CE, 2011 U.S. Dist. LEXIS 102267 (E.D. Tex. Sept. 9, 2011) ................ 10

*Walker v. City of Bogalusa*,
    168 F.3d 237 (5th Cir. 1999)................................................................................................. 5

*Walker v. K. Corr. Sergeant*,
    308 F. App'x 178 (9th 2009).............................................................................................. 10

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# SUMMARY OF ARGUMENT

Defendant Biosearch Technologies Inc. ("Biosearch"), and its outside counsel Morgan, Lewis & Bockius LLP ("Morgan Lewis") admit that they violated the governing protective order by giving 2,963 pages each designated "Outside Attorneys' Eyes Only" to Biosearch's CEO, who shared it with multiple other Biosearch employees who then shared it with non-parties. Biosearch further violated court orders by failing to notify the producing parties, Plaintiffs Life Technologies Corporation and Applied Biosystems LLC ("Life Tech"). Instead, Morgan Lewis implemented an informal self-help remedy, which proved to be ineffective.

Life Tech ultimately learned of the unauthorized disclosure through discovery. But when Life Tech approached Biosearch about the problem, Morgan Lewis compounded its violations by making representations – such as that no non-parties had received the protected information and that the problem had been resolved – which later proved to be untrue. Life Tech learned through deposition that well over a month after Life Tech raised this issue, individuals at Biosearch still had access to some of Life Tech's protected information.

Multiple remedies are appropriate to address the violations of Court Orders here. First, the attorneys who violated the relevant protective orders should be subject to the same bar to prosecuting patents in the field of that patents-in-suit that Life Tech's in-house attorneys are subject to. Second, the responsible attorneys should be barred from any further access to Life Tech's confidential materials.   This remedy was applied to a highly analogous case where attorneys "resort[ed] to self-help" to unilaterally redact designated documents and show them to their clients without informing the producing party. *Visto Corp. v. Seven Networks, Inc.*, No. 2:03-CV-333-TJW, 2006 U.S. Dist. LEXIS 91453, at *24-25 (E.D. Tex. Dec. 19, 2006). Third, a non-party witness who improperly received the protected materials and his wife (also a witness) should be precluded from testifying in this case. Finally, the Court should award Life Tech its fees and costs of enforcing the violated orders.

LIFE TECH'S MOTION FOR SANCTIONS
CASE NO. 3:12-cv-00852-JSW

1    PLEASE TAKE NOTICE that on Friday, April 27, 2012 at 9:00 a.m., or as soon

2   thereafter as this matter may be heard, in Courtroom 11, 19th Floor of the United States District

3   Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate

4   Avenue, San Francisco, California, 94102, the Honorable Jeffrey S. White presiding, Plaintiffs

5   Life Technologies Corporation and Applied Biosystems, LLC, (collectively, "Life Tech") will

6   and hereby do move the Court for an order imposing sanctions for violation of protective order.

7    Life Tech seeks sanctions of (1) barring Messrs. Jeffry Mann and Daniel Johnson from

8   participating in the prosecution of patents in the same field of technology as the patents-in-suit,

9   (2) barring Messrs. Mann and Johnson from further access to Life Tech protected information, (3)

10  excluding testimony of Drs. Larry and Laura Parkhurst in this action, and (4) awarding Life Tech

11  expenses incurred in enforcing the orders, including the $27,400.42 incurred to date.

12  **MEMORANDUM OF POINTS AND AUTHORITIES**

13  **I.    INTRODUCTION**

14   Defendant Biosearch Technologies Inc. ("Biosearch") and its counsel Morgan, Lewis &

15  Bockius LLP ("Morgan Lewis") admit to sharing highly confidential Life Tech information with

16  competitive decision makers in violation of protective orders governing this case.   Rather than

17  seeking to correct their violations, they sought to keep the disclosure secret and engaged in

18  ineffective self-help remedies.   When Life Tech learned of the problem through discovery,

19  Morgan Lewis insisted that the materials had been removed from Biosearch and had not been

20  shared with others.   Depositions proved this was incorrect.   Since then, Morgan Lewis has

21  attempted to justify its behavior with claims that the materials were not "properly designated" and

22  that such disclosures "occur[] in every case involving large amounts of documents."   Exs. Y and

23  AA.[1]  Accordingly, Life Tech seeks enforcement of the protective orders.

24   Life Tech brought this case to enforce a family of patents invented by Dr. Kenneth Livak

25

26  [1]   Cited exhibits refer to those of the February 27, 2012 Declaration of Cora L. Schmid in Support
     of Plaintiffs' Motion for Sanctions for Violation of Protective Order unless otherwise noted.

27  [2]   References to Declarations include reference to exhibits cited in the referenced sections.

28  [3]   This Stipulated Protective Order was later superseded but the new Order only changed the
     identity of the designated in-house Life Tech party representatives.  *See* Dkt. No. 214.
     [4]   Life Tech believes that the Eastern District of Texas and the Northern District of California

-1-
LIFE TECH'S MOTION FOR SANCTIONS
CASE NO. 3:12-cv-00852-WHA

and his co-inventors related to a process used in biological research referred to as "real-time PCR." *See* Dkt. Nos. 1-1, 1-2, 1-3, 1-4, and 1-5. Dr. Livak's inventions made this process widely accessible, by providing probes and methods to make it more affordable and more robust. *See, e.g.*, Dkt. No. 1-4 at 4:6-14. As required by the operative local rules, Life Tech produced nearly three thousand pages of highly confidential laboratory notebooks created by Dr. Livak and his co-inventors to Defendants' outside counsel. Life Tech prominently labeled each page "Outside Attorneys' Eyes Only," and relied upon the governing Patent Rule ("P.R.") 2-2, Ex. B, to protect these documents. Ten months later, Morgan Lewis produced pages from these protected notebooks from Biosearch's company files – *bearing Life Tech's "Outside Attorneys' Eyes Only" designation and Bates numbers above Biosearch's Bates numbers* – as well as commentary on the notebooks by Biosearch's President and CEO. *See* Ex. J; Ex. O. Life Tech first raised this issue with Morgan Lewis on November 3, 2011. Morgan Lewis stated that the materials were only given to three individuals and all unauthorized copies were removed 13 days after the initial disclosure, but then ignored Life Tech's requests for further information. Morgan Lewis' representations have proven to be false. Depositions showed that the unauthorized materials had also been given to third party individuals and that Biosearch still had access to some of Life Tech's highly confidential information. But Morgan Lewis discounts Life Tech's concerns and refuses to enact any measures to preclude further unauthorized disclosures.

Life Tech requests that the Court: (1) subject Messrs. Mann and Johnson to the patent prosecution bar in the Stipulated Protective Order; (2) bar Messrs. Mann and Johnson from further access to Life Tech protected materials; (3) preclude testimony from unauthorized material recipient Dr. Larry Parkhurst and his wife Dr. Laura Parkhurst; and (4) grant Life Tech the costs of enforcing P.R. 2-2 and the Stipulated Protective Order.

## II.   FACTS

### A.   Unauthorized Disclosures of Life Tech Confidential Notebooks.

As required by P.R. 3-1, Ex. B, and Court Order, Dkt. No. 73, Life Tech produced 2,963 pages of highly confidential laboratory notebooks to Biosearch's outside counsel on May 28, 2010. *See* Ex. B. Each page is designated "Outside Attorneys' Eyes Only." Life Tech produced

these documents under P.R. 2-2, which requires that such designated documents "shall be limited to each party's outside attorney(s) of record and the employees of such outside attorney(s)." P. R. 2-2, Ex. B.

On June 4, 2010 Morgan Lewis and Biosearch admit that Morgan Lewis partner Jeffry Mann "forwarded the laboratory notebooks to Dr. Ronald Cook," Biosearch's CEO. Ex. C. Although he noticed the "Outside Attorneys' Eyes Only" label, Dr. Cook passed copies of the notebooks to at least three other Biosearch employees. He even commented to ███████████ ███████████████████████████████████████████████ Ex. I.

███████████████████████████████████████████████████████████████████

███████████████████████████████ Ex. J; Ex. E at 43:11-24. Mr. Beal in turn shared notebook excerpts via email not only with Dr. Parkhurst, and but also third party Mr. Jeff Oster, who has since sued Life Tech. Ex. G at 10:21-11:10, 34:13-35:7, 35:8-35:23, 36:22-25; Ex. E at 24:18-25:12, 26:8-26:15, 43:11-24, 57:13-22; Ex. F at 14:18-15:8. Biosearch alleges that Dr. Larry Parkhurst's and his wife Dr. Laura Parkhurst's publications render at least some of the claims of the patents-in-suit obvious. Ex. K. Biosearch deposed both of the Parkhursts as fact witnesses about four months after the unauthorized disclosure but before Life Tech learned of the disclosure. *See* Ex L. Mr. Oster, is the attorney owner and "Patent Assassin" of Troll Busters, LLC, whose "[c]urrent favorite targets are the term extension portfolio of sketchy PCR patents from Life Tech and Roche Diagnostics," and who recently sued Life Tech. Ex. M; Ex. N. Mr. Oster does not representing Biosearch in this case. Ex. E at 26:8-26:15.

**B.    Morgan Lewis's Secret Response to the Unauthorized Disclosures.**

Morgan Lewis admits that nearly two weeks after the initial unauthorized disclosure to Dr. Cook, around June 17, 2010, Mr. Johnson "learned that the notebooks had been sent to Dr. Cook from Mr. Mann." Ex. C at 1. Mr. Johnson "instruct[ed] Mr. Mann to notify Biosearch that the notebooks were marked 'Outside Attorneys' Eyes Only,' that Biosearch could not make any use of the documents and that all copies must be immediately destroyed." *Id.* He did not instruct Mr. Mann to retrieve the notebooks from their client or to inform Life Tech of the violation. *See id.* Mr. Mann in turn delegated these instructions to Dr. Cook – instructing him to delete the

1   materials on one occasion, and later asking Dr. Cook if everything had been deleted – without
2   directly supervising or verifying the deletion process.   Ex. E at 22:21-26:4.   On or around June
3   21, 2010, Dr. Cook then instructed Mr. Beal and Mr. Sowers – but not any of the other recipients
4   – to delete the materials.   *Id.* at 27:5-15.   Dr. Cook did not delete his own emails or the attached
5   notebook pages.   *Id.* at 26:8-15, 28:24-29:4.

6           **C.      Negotiation and Entry of the Case-Specific Protective Order.**

7           During the same time period that Mr. Johnson learned of the unauthorized disclosure,
8   Morgan Lewis proposed that the case-specific protective order should require immediate
9   notification upon an unauthorized disclosure.   Schmid Decl. ¶¶ 10-11.[2]   In fact, Morgan Lewis
10  proposed this on June 18, 2010, ***the day after Mr. Johnson learned of its own unauthorized***
11  ***disclosure***.   *Id.*   The parties agreed to this provision by July 14, 2010, *id.* at ¶¶ 10-11, and it was
12  included in the Stipulated Protective Order entered April 6, 2010.   Dkt. No. 174 at 4).[3]   The
13  Order also states that its confidentiality provisions apply to all documents produced in this action,
14  not only to those produced after its entry.   Dkt. No. 174 at 1-2.   In spite of this, Morgan Lewis did
15  not notify Life Tech of the unauthorized disclosure when the Stipulated Protective Order issued.

16          This Order also permitted two in-house Life Tech attorneys access to HIGHLY
17  CONFIDENTIAL – OUTSIDE COUNSEL'S EYES ONLY information, but required them to
18  sign a patent prosecution bar.   *Id.* at 10-11.   The prosecution bar was a sua sponte addition by the
19  Court, following Biosearch's argument that "too high a risk existed" that a Life Tech attorney
20  employee who had never violated a protective order might inadvertently do so here just because
21  that individual prosecutes patents for Life Tech.   *See id.*; Dkt. No. 104 at 11 n.2.

22          **D.      Morgan Lewis's Response to Life Tech's Discovery of the Disclosure.**

23          Life Tech discovered the protective order violations when it found its own highly
24  confidential documents contained and discussed in Biosearch's production.   *See* Schmid Decl. at
25  ¶ 14.   On November 3, 2011, Life Tech sought a full accounting of the unauthorized disclosure
26

27  [2]  References to Declarations include reference to exhibits cited in the referenced sections.
28  [3]  This Stipulated Protective Order was later superseded but the new Order only changed the
     identity of the designated in-house Life Tech party representatives.   *See* Dkt. No. 214.

1    and of all steps taken to prevent any further unauthorized disclosures.  Ex. P.   Mr. Johnson

2    claimed the matter had been "resolved," and that "[t]he notebooks were deleted from the servers

3    and storage devices and a recent search confirms that they are not on the Biosearch premises and

4    that neither Mr. Beal nor Mr. Sowers has any copies."  Ex. C.  Although asked, Morgan Lewis

5    failed to identify the date on which documents were deleted, whether Biosearch made any

6    comments or alterations to the documents before their deletion, or to confirm that Dr. Cook no

7    longer had copies.  *See id.* at 2.  Morgan Lewis admitted that e-mail documents were not

8    destroyed in June of 2010, but did not confirm when they were deleted.  Ex. D.

9         After several letters between the parties, Morgan Lewis did not respond to Life Tech's

10   November 17, 2011 letter seeking more information, so Life Tech sought a telephone meet and

11   confer.  *See* Ex. T.  During the parties' meet and confer, Morgan Lewis insisted there was no

12   problem, refused any further measures to protect Life Tech's confidential information, but

13   ultimately agreed to permit deposing the Dr. Cook and Messrs. Beal and Sowers.  *See* Ex. W.

14   These depositions revealed that Morgan Lewis' earlier letters were not accurate.  At least three

15   individuals in addition to Dr. Cook and Messrs. Beal and Sowers received unauthorized materials,

16   including third parties.  Schmid Decl. at ¶ 6-8.  Dr. Cook testified he *still* had access to excerpts

17   of Life Tech's notebooks in his e-mail systems.  Ex. E at 28:24-29:4; 30:24-31:5.

18   **III.    ARGUMENT**

19        Courts may sanction violations of protective orders under both Federal Rule of Civil

20   Procedure 37(b) and under their own inherent authority.  *Allergan, Inc., v. Hi-Tech Pharm. Co.,*

21   *Inc.*, No. 2:09-cv-97, No. 2:09-cv-182, No. 2:09-cv-348, No. 2:10-cv-200, 2011 U.S. Dist. LEXIS

22   69429, at *15-17 (E.D. Tex. June 28, 2011).[4]   "The inherent powers of this Court" to enter

23   sanctions "are those which 'are necessary to the exercise of all others.'"  *Id.* at *16-17 (citing

24

25   _____

     [4]    Life Tech believes that the Eastern District of Texas and the Northern District of California
     apply the same law regarding sanctions.  Should the Court find differently, Eastern District of
26   Texas law would govern as in this forum if "the two concerned states have different laws. . . . we
     apply the law of the state whose interests would be more impaired if its policy were subordinated
27   to the policy of the other state."  *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009).  Here,
     because the violated local rules and Court order are those of the Eastern District of Texas, that
28   court has the stronger interest in enforcing these orders.

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)). "The contempt sanction is the most prominent inherent power, 'which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court.'" *Id.* "[T]he power to punish for contempt is an inherent power of the federal courts and . . . it includes the power to punish violations of their own orders." *In re Bradley*, 588 F.3d 254, 265 (5th Cir. 2009) (quotation omitted). In the Fifth Circuit a "local rule is a court order." *Walker v. City of Bogalusa*, 168 F.3d 237, 239 (5th Cir. 1999) (citation omitted); *Facebook, Inc. v. Pac. Northwest Software, Inc.*, 640 F.3d 1034, 1041 (9th Cir.).[5] A party seeking sanctions for a protective order violation must "demonstrate, by clear and convincing evidence, (1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 291 (5th Cir. 2002) (citation omitted). Each of these elements is present here and, as a result, the Court should award and impose appropriate sanctions.

> **A.** **Morgan Lewis and Biosearch Have Violated Court Orders.**

> **1.** **Morgan Lewis and Biosearch Admit Violating P.R. 2-2.**

Life Tech made its first production under the governing Patent Local Rules, under which "disclosure of the confidential document or information shall be limited to each party's outside attorney(s) of record and the employees of such outside attorney(s)." P.R. 2-2, Ex. B. Mr. Mann admittedly violated this rule when he distributed 2,963 designated pages to Dr. Cook, Biosearch's President and CEO. *See* Ex. C. Thus, the violation of Patent Rule 2-2 is undisputed.

> **2.** **Morgan Lewis Improperly Resorted to Incomplete "Self-Help."**

"[A] lawyer operating under the terms of a Protective Order issued by this court has no right to resort to self-help when he or she views the provisions of that order to be burdensome or onerous. The proper remedy is to approach the court." *Visto Corp. v. Seven Networks, Inc.*, No. 2:03-CV-333-TJW, 2006 U.S. Dist. LEXIS 91453, at *24-25 (E.D. Tex. Dec. 19, 2006). When Mr. Johnson learned of the P.R. 2-2 violation, he merely directed ***the attorney who committed the***

---

[5] The Northern District of California specifically provides that "[f]ailure by counsel or a party to comply with any duly promulgated local rule or any Federal Rule may be a ground for imposition of any authorized sanction." Civ. L.R. 1-4.

*violation* to implement a self-help remedy.  Ex. C.  Specifically, he "instructed Mr. Mann to notify Biosearch that the notebooks were marked 'Outside Attorneys' Eyes Only,' that Biosearch could not make any use of the documents and that all copies must be immediately destroyed," without any inquiry into whether Biosearch had made any discoverable comments or changes to the documents.  *Id.*  Morgan Lewis' only follow-up effort was to ask *one of the individuals at Biosearch if Biosearch had complied.*  Schmid Decl. at ¶ 9.

Morgan Lewis's remedy was ineffective.  After the initial violation occurred, Life Tech's documents were passed through Dr. Cook *to at least five other individuals, including competitive decision makers both within and outside of Biosearch*.  *Id.*  No one at Morgan Lewis verified that unauthorized documents were no longer on Biosearch's premises other than asking Dr. Cook to confirm.  *Id.*  As a result, Biosearch competitive decision makers retained access to notebook pages clearly marked with Life Tech's "Outside Attorneys' Eyes Only" designation in their e-mail system *until at least December 20, 2011* and appear to have actually reviewed these materials *weeks after Life Tech raised this issue with Morgan Lewis*.  Ex. E at 28:24-29:4; 30:24-31:5.  Thus, more than six weeks after Life Tech raised the issue, Ex. P, more than five weeks after Morgan Lewis assured Life Tech that "[t]he notebooks were deleted from the servers and storage devices and a recent search confirms that they are not on the Biosearch premises," Ex. C at 2, and nearly two weeks after Life Tech sent Morgan Lewis a draft of this motion, Schmid Decl. at ¶ 23, Biosearch's competitive decision makers still had possession of Life Tech confidential information.

Morgan Lewis should have immediately informed Life Tech of the unauthorized disclosure.  Life Tech could then have directed removal of all unauthorized materials from Biosearch's possession *after* such preservation of all materials, confirmation of the deletion, and verification of the scope of the unauthorized disclosure.  But Morgan Lewis kept Life Tech in the dark.  Instead, it allowed some unauthorized materials to remain in Biosearch's email and deleted other documents *before* determining whether they contained discoverable information.

Mr. Johnson's decision to engage in self-help and his reliance on the violator for that self-help remedy were improper.  Mr. Johnson's efforts did not remedy the disclosure.

### 3.   Morgan Lewis Violated the April 6, 2011 Protective Order.

On April 6, 2011, the Court entered the Stipulated Protective Order in this case. Dkt. No. 174. Its confidentiality provisions "apply to materials, information, documents and things produced or disclosed, whether formally or informally, or submitted to the Court in this Action," not just to materials produced after it was entered. *Id.* at 1-2. Thus, beginning on April 6, 2011, the Stipulated Protective Order protected Life Tech's previously produced lab notebooks.[6]

On at least April 6, 2011, Morgan Lewis attorneys had a responsibility to immediately notify Life Tech of the improper disclosure under Section 3(d) of the Stipulated Protective Order. Dkt. No. 174 at 4-5. Once again, they violated a court order by failing to notify Life Tech. Their sole excuse was that "Morgan Lewis and Biosearch believed in good faith that the disclosure had been resolved." Ex. C. But the Stipulated Protective Order does not provide a "good faith belief" exception – it required immediate notification. As explained above, Morgan Lewis's belief was incorrect – Biosearch still had access to unauthorized materials. Morgan Lewis even has stated that it knew Biosearch still had access to the unauthorized materials. Ex. C.

Moreover, when Life Tech approached Morgan Lewis to remedy this situation, Mr. Johnson represented that the materials had not been shared with third parties and that they had been removed from all unauthorized individuals, only to later have the Biosearch individuals testify that those representations were incorrect. *Compare* Exs. C *and* D *with* Ex. E at 52:17-53:19, 56:12-57:22. After learning that these representations were incorrect, Life Tech sought to address these issues with Morgan Lewis. Ex. X. Mr. Johnson responded by insisting that Life Tech's laboratory notebooks were not "properly designated" and that such unauthorized disclosures happen "in every case involving large amounts of documents." Ex. Y; Ex AA.

Morgan Lewis was required to inform Life Tech that unauthorized individuals possessed their materials, or, at the very least, assist Life Tech in its own efforts to protect its materials.[7]

---

[6] P.R. 2-2 also states that it only governs "until a protective order is issued by the Court."

[7] The length of time in between the unauthorized disclosure and the entry of the Stipulated Protective Order does not excuse Messrs. Mann and Johnson's failure to abide by the notification requirement. Morgan Lewis not only knew of but actually proposed the unauthorized disclosure provision the day after Mr. Johnson learned of the improper disclosure, and Mr. Johnson signed the Joint Motion for a Protective Order containing that provision the following month. *See* Ex. P;

1   Morgan Lewis's failure to notify Life Tech of its unauthorized disclosure of Life Tech's protected

2   information on April 6, 2010 and its failures to later address Life Tech's concerns with the gravity

3   to which they were entitled constitute breach of the Stipulated Protective Order.

### B.   The Court Should Sanction Morgan Lewis and Biosearch for their Violations.

5   Multiple sanctions are appropriate for Morgan Lewis's violations of the Eastern District of

6   Texas Patent Local Rules and the Stipulated Protective Order:  (1) barring Mr. Mann and Mr.

7   Johnson from participating in the prosecution of patents in the same field of technology as the

8   patents-in-suit, (2) barring Mr. Mann and Mr. Johnson from further access to Life Tech protected

9   information, (3) excluding the testimony of Drs. Larry and Laura Parkhurst in this action, and (4)

10  awarding Life Tech fees and costs incurred in enforcing the violated orders.

### 1.   Legal Standards for Sanctions.

12  "[I]t is firmly established that 'the power to punish for contempts is inherent in all

13  courts.'" *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43 (1991) (citation omitted). "[T]he underlying

14  concern that gave rise to the contempt power was not . . . merely the disruption of court

15  proceedings.  Rather, it was disobedience to the orders of the Judiciary, regardless of whether

16  such disobedience interfered with the conduct of trial." *Id.*

17  The Eastern District of Texas evaluates sanctions for Patent Rule violations for whether

18  they "would adequately deter future violation of the Patent Rules and rectify the unfair prejudice

19  to Plaintiff and [any] potential disruption to the Court[]." *LML Patent Corp. v JPMorgan Chase*

20  *& Co.*, No. 2:08-CV-448, 2011 U.S. Dist. LEXIS 128724 at *20 (E.D. Tex. Aug. 11, 2011).  For

21  discovery violations "a district court 'has broad discretion under Rule 37(b) to fashion remedies

22  suited to the misconduct.'" *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990). "[T]he

23  Fifth Circuit does not require a showing of willful or 'contumacious' misconduct as a prerequisite

24  to sanctions that are less harsh than a dismissal or default judgment." *Trenado v. Cooper Tire &*

25  *Rubber Co.*, 274 F.R.D. 598, 600 (S.D. Tex. 2011) (citing *Chilcutt v. United States*, 4 F.3d 1313,

26

(continued...)

27

28  Ex. DD; Dkt. No. 173 at 1.  Morgan Lewis should have known that once the Court entered the
    Stipulated Protective Order, it would have to notify Life Tech of the unauthorized disclosure.

1322, 1323 n.23 (5th Cir. 1993)).

Under its inherent authority, a "district court can exercise its discretion and fashion an appropriate sanction" for a protective order violation. *Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*, 305 F.3d 1303, 1314-15 (Fed. Cir. 2002). Courts have ordered severe remedies for protective order violations. *See Walker v. K. Corr. Sergeant*, 308 F. App'x 178 (9th 2009) (affirming dismissal of action as a sanction for protective order violation); *Versata Software, Inc., v. SAP Am., Inc.*, No. 2:07-CV-153 CE, 2011 U.S. Dist. LEXIS 102267, at *24-25 (E.D. Tex. Sept. 9, 2011) (staying entry of injunction as a sanction for protective order violation); *Visto*, 2006 U.S. Dist. LEXIS 91453, at *23 (same); *Biocore Med. Tech., Inc. v. Khosrowshahi*, No. 98-2031-KHV, No. 98-2175-KHV, 1998 U.S. Dist. LEXIS 20512, at *13 (D. Kan. Nov. 6, 1998) (disqualifying attorney who violated protective order from the case).

Notably, the Eastern District of Texas has barred an attorney responsible for an unauthorized disclosure from further access to confidential information in the litigation. *Visto*, 2006 U.S. Dist. LEXIS 91453, at *23-24. *Visto* is analogous to this case. Visto's outside counsel unilaterally redacted expert reports designated under the Protective Order and disclosed those redacted versions to Visto's personnel without notifying the producing party. *Id.* at *19, *24. The producing party only learned of the unauthorized disclosure through discovery. *Id.* The Court found that "[a]lthough Visto urges that it operated in good faith to redact [the producing party's] confidential information, a lawyer operating under the terms of a Protective Order issued by this court *has no right to resort to self-help*," and the Court "therefore bar[red] [the attorney] from receipt of any further information under the Protective Order." *Id.* at *24-25 (emphasis added); *see also Brocade Communs. Sys. v. A10 Networks, Inc.*, 10-CV-03428-LHK, 2011 U.S. Dist. LEXIS 99932, at *14 (N.D. Cal. Sept. 6, 2011) ("It is not up to the party filing a document containing information designated as confidential by the other party to make a subjective decision about whether the designation is accurate. That decision is for the court to make.")

Courts also grant evidentiary sanctions for protective order violations where appropriate. For example, the Eastern District of Texas struck an expert report and precluded the expert for testifying where a party inadvertently failed to properly disclose the expert under the protective

LIFE TECH'S MOTION FOR SANCTIONS
CASE NO. 3:12-cv-00852-JSW

order. *Allergan*, 2011 U.S. Dist. LEXIS 69429, at *13-14. It precluded this testimony despite the inadvertence of the violation at issue because Defendants "failed to provide a legitimate reason for violating the Protective Order . . . [and] condoning Defendants' 'inadvertent oversight' would undermine the Court's integrity and ability to enforce its own rules." *Id.* at 18. Other courts have imposed similar sanctions. *See Ibarra v. Sunset Scavenger Co.*, No. C 01 2875 SI, 2003 U.S. Dist. LEXIS 8711, at *30-31 (N.D. Cal. May 20, 2003) (striking a section of a declaration for a protective order violation); *Burkette v. Waring*, No. 10-10230, 2010 U.S. Dist. LEXIS 88758 (E.D. Mich. Aug. 27, 2010) (unauthorized use of protected material from one litigation in a second litigation resulted in preclusion of the material from both litigations).

### 2. Mr. Mann and Mr. Johnson Should Be Subject to the Stipulated Protective Order's Prosecution Bar.

Messrs. Mann and Johnson should be subject to the prosecution bar in the Stipulated Protective Order.[8] Mr. Johnson previously argued that Life Tech in-house counsel should not have access to Biosearch's highly confidential information where the in-house counsel "prosecuted various patents concerning the technology-at-issue in this case, and could potentially use Biosearch['s] highly confidential technological information, *even inadvertently*, to strengthen Plaintiff's intellectual property portfolio." Dkt. No. 104 at 11 n.2 (quotation omitted) (emphasis added). Following these arguments, the Court sua sponte ordered that in-house counsel who access highly confidential information cannot "participate in the prosecution of patents in the same field of technology as the patent-in-suit throughout the pendency of this case and for a period of eighteen months following the final disposition of this action." Dkt. No. 172 at 4-5.

Biosearch's argument applies more strongly to attorneys who have violated the Stipulated Protective Order than it did to Life Tech's in-house counsel. Biosearch argued that "too high a risk existed" that an innocent individual might inadvertently violate a protective order if that individual prosecutes patents for Life Tech. Dkt. No. 104 at 11 n.2. Life Tech now believes that "too high a risk exist[s]" that Messrs. Mann and Johnson, who have violated court orders and shown disregard for Life Tech's highly confidential materials, may inadvertently use Life Tech's

---

[8] If the Court enters a new protective order, they should be subjected to a similar provision.

highly confidential information if they prosecute patents for Life Tech's competitors. Mr. Mann actively prosecutes patents for Biosearch related to the technology-at-issue in this lawsuit. *See* Schmid Decl. at ¶ 40. The Court should award Life Tech the same protection that the Eastern District of Texas previously granted to Biosearch with far less cause. Both Mr. Mann and Mr. Johnson should be subject to the prosecution bar that Life Tech in-house attorneys are required to sign to gain access to Biosearch highly confidential information. *See* Dkt. No. 214 at 25-26.

### 3. Mr. Mann Should Be Precluded From Further Access to Life Tech's Designated Information.

Morgan Lewis has admitted that Mr. Mann forwarded 2,963 pages of Life Tech documents each marked "Outside Attorneys' Eyes Only" to the CEO of Biosearch. Ex. C. Mr. Mann failed to recognize any resulting problem until *nearly two weeks later*, when Mr. Johnson informed him that such behavior was improper. *See id.* Barring Mr. Mann from further access to Life Tech's protected materials is the appropriate sanction for disregarding P.R. 2-2 designations.

Biosearch's previous arguments support this sanction. Biosearch argued that a Life Tech attorney should be barred from receiving "Outside Attorneys' Eyes Only" materials merely because he "participate[d] in litigation strategy and licensing negotiations." Dkt. No. 104-1 at 12 n.2. Biosearch argued that such responsibilities led to an unacceptable "risk of inadvertent disclosure or misuse of [the defendants'] confidential information." *Id.* The Court rejected this argument because Defendants had "not identified any specific risks arising from granting [this attorney] access to the material at issue." Dkt. No. 172 at 3. Here, a *specific* risk arises from allowing Mr. Mann continued access to designated material: he may repeat his previous improper disclosure and share designated materials with Biosearch. *See Visto*, 2006 U.S. Dist. LEXIS 91453, at *24 ("the court will also bar [the attorney] from further receipt of confidential information in this case or any other case on the court's docket involving Visto Corporation.").

### 4. Mr. Johnson Should Also Be Precluded From Further Access to Life Tech's Designated Information.

Similarly, this Court should bar Mr. Johnson from further access to Life Tech's designated information. Mr. Johnson signed the parties' filings regarding the protective order; he had a

particular duty to comply with these Court Orders.  *See* Dkt Nos. 88 at 2; 92 at 2; 101 at 2; 104 at 1; 173 at 1; 213 at 2.  But like Visto's attorney, Mr. Johnson improperly "resort[ed] to self-help" by unilaterally attempting to clean-up his colleagues protective order violation.  *See Visto*, 2006 U.S. Dist. LEXIS 91453, at *24-25; Ex. C at 1.

Mr. Johnson's ineffective, self-help remedy left Life Tech's confidential information in Biosearch's e-mail system, while other electronic documents were destroyed without investigation of whether they contained any discoverable changes despite the litigation hold.  Ex. D at 1-2; Ex. E. at 28:24-29:4; Ex. G at 41:17-42:10.  Mr. Johnson did not follow-up to ensure his instructions were even implemented.  Ex. G at 48:22-50:1.

Moreover, Mr. Johnson's statements concerning the disclosure turned out not to be true. Although he stated that "Morgan Lewis has verified that Biosearch does not possess any Life Technologies documents marked 'Outside Attorneys' Eyes Only.'"  Ex. C.  Biosearch's CEO admitted that Biosearch retained access to these materials as of at least December 20, 2011.  Ex. E. at 28:24-29:4.  In fact, Dr. Cook apparently reviewed these materials more than six weeks after Life Tech raised this issue with Mr. Johnson.  *Id.* at 30:24-31:5.  Similarly, Mr. Johnson denied that these materials had been shared beyond "Messrs. Cook, Beal and Sowers," and specifically stated that "[w]e also confirmed, that the information was not provided outside of Biosearch."  Ex. C.  But Biosearch witnesses revealed that materials were shared at least with non-parties Dr. Parkhurst and Mr. Oster.  Ex. G at 10:21-11:10, 34:13-35:7, 35:8-35:23, 36:22-25,  Ex. E at 24:18-25:12, 26:8-26:15, 25:16-22, 40:10-20, 43:11-24, 57:13-22, Ex. F at 14:18-15:8.  Finally, when the failures of his "self-help" remedy came to light, Mr. Johnson responded by insisting that the notebooks were not entitled to the protection and that such unauthorized disclosures happen "in every case involving large amounts of documents."  Ex. Y.

Mr. Johnson's actions constitute three breaches. First, Mr. Johnson's use of a "self-help" remedy supports barring him from accessing further Life Tech designated materials.[9]  *See Visto*,

---

[9]  Mr. Johnson showed his belief that he may pick which orders he will follow when he repeatedly refused to follow the governing L.R. CV-30, Ex. EE, which requires that "[u]nless permitted by Fed. R. Civ. P. 30(c)(2), a party may not instruct a deponent not to answer a question. Objections to questions during the oral deposition are limited to 'Objection, leading' and 'Objection, form.'"  *See* Ex. G at 14:13-15:22; Ex. E at 11:17-12:3, 58:7-59:18; Ex. F at 13:3-13.

2006 U.S. Dist. LEXIS 91453, at *24-25 ("a lawyer operating under the terms of a Protective Order issued by this court has no right to resort to self-help."); *Brocade*, 2011 U.S. Dist. LEXIS 99932, at *14 ("It is not up to the party filing a document containing information designated as confidential by the other party to make a subjective decision about whether the designation is accurate. That decision is for the court to make."). Second, Mr. Johnson's failure to immediately notify Life Tech on the date the Court entered the Stipulated Protective Order constitutes a separate breach. Finally, Mr. Johnson's misleading representations to Life Tech regarding the violation constitute a breach of the Stipulated Protective Order's requirement that "the Receiving Party responsible for the disclosure shall immediately notify the Designating Party of all the pertinent facts." Dkt. No. 174 at 4-5. Consequently, Mr. Johnson should be barred from further access to Life Tech's designated materials in this case.

### 5.   Drs. Larry and Laura Parkhurst Should Be Precluded From Testifying in This Case.

Unbeknownst to Life Tech, Biosearch shared highly confidential Life Tech notebooks to fact witness Dr. Larry Parkhurst in June of 2010. Schmid Decl. at ¶ 8. As a result, any testimony that Dr. Larry Parkhurst gave in this case has been inherently tainted. Further, because Biosearch did not convey the confidentiality of these documents to Dr. Larry Parkhurst, the risk that he shared the information he learned from these documents with his wife, who also gave testimony in this matter and contaminated her testimony is also too great. Dr. Larry Parkhurst and his wife Dr. Laura Parkhurst should both be precluded from offering any testimony in this case.

Biosearch alleges that the Parkhursts' work renders some or all of the patents-in-suit obvious. Ex. K. Biosearch deposed the Parkhursts, as fact witnesses in October 2010 – *after* Mr. Beal shared pages from the underlying invention notebooks for the patents-in-suit with Dr. Larry Parkhurst both by e-mail and in person. *See* Ex. G at 10:21-11:10, 34:13-35:7. Dr. Cook believed the unauthorized disclosure would have a large impact on Dr. Parkhurst, ███████ ████████████████████████████ Ex. J. Biosearch cannot un-ring that bell and cause Dr. Parkhurst to forget the proprietary information he has seen. The risk that Life Tech's confidential invention materials may have *even inadvertently* (to use Biosearch's standard, *see*

1   Dkt. No. 104 at 11 n.2) colored Dr. Parkhurst's invalidity testimony is unacceptable. As Dr.

2   Cook testified "we had the books. *I can't erase the understanding* of when Livak did his work."

3   Ex. E at 47:16-17 (emphasis added). "Defendants have failed to provide a legitimate reason for

4   violating the Protective Order . . . [and] condoning Defendants' 'inadvertent oversight' would

5   undermine the Court's integrity and ability to enforce its own rules." *Allergan*, 2011 U.S. Dist.

6   LEXIS 69429 at 18. The Court should preclude both Parkhursts from testifying in this matter.

7

8   **6.   Biosearch Should Pay Life Tech's Costs of Enforcing P.R. 2-2 and the Stipulated Protective Order.**

9   Courts commonly award the costs of enforcing protective orders following unauthorized

10  disclosures to the damaged party. *See, e.g., Lyn-Lea*, 283 F.3d at 291; *Trenado*, 274 F.R.D. at

11  600; *Henderson v. City & County of San Francisco*, No C-05-234 VRW, 2006 U.S. Dist. LEXIS

12  87262 (N.D. Cal. Dec. 1 2006). Life Tech seeks an award of the costs, attorneys' fees, and

13  expenses it has incurred to date seeking to enforce this Court's protective orders. As described in

14  the co-filed Declarations, Life Tech has incurred legal fees of $23,415.00 to date investigating the

15  unauthorized disclosure, conferring with Morgan Lewis in attempts to reach an acceptable

16  resolution without Court intervention, deposing Messrs. Cook, Beal, and Sowers, and preparing

17  this motion and supporting documents. *See* Keller Decl., Maloney Decl., and Schmid Decl. at ¶

18  31-35. Additionally, Life Tech has incurred $3,985.42 in fees for videography and transcripts of

19  the depositions of Messrs. Cook, Beal, and Sowers. Schmid Decl. at ¶ 36-37. These total fees of

20  $27,400.42 fees are reasonable and should be reimbursed. *See Brocade*, 2011 U.S. Dist. LEXIS

21  99932, at *18-19 (holding a "blended billing rate of $630" per hour and a total fees of $24,192

22  were reasonable for "meeting and conferring about and drafting" a brief related to a protective

23  order violation, without any deposition costs).

24  **IV.   CONCLUSION**

25  For the reasons stated above, Life Tech respectfully requests the relief described above.

26

27

28

Dated:  February 27, 2012

Respectfully  submitted,

                    /s/  Cora Louise Schmid

Edward  W.  Goldstein  (*Pro Hac Vice
      Admission Pending*)
egoldstein@gliplaw.com
Alisa  Anne  Lipski  (State Bar No. 278710)
alipski@gliplaw.com
GOLDSTEIN  &  LIPSKI  LLP
1177 West Loop South, Suite 400
Houston, TX  77027
Telephone:        (713) 877-1515
Facsimile:        (713) 877-1145

Cora L. Schmid  (State Bar No. 237267)
cschmid@helixip.com
HELIXIP  LLP
400 Seaport Court, Suite 105
Redwood City, CA  94063-2799
Telephone:      (650) 241-0194
Facsimile:        (650) 362-1802

Katherine  Nolan-Stevaux  (State Bar
      No. 244950)
katherine.nolan-stevaux@lifetech.com
LIFE TECHNOLOGIES  CORP.
850 Lincoln  Centre Drive
Foster City, CA  94404
Telephone:        (650) 554-3584
Facsimile:        (650) 554-2885

*Attorneys for Plaintiffs Life Technologies
Corporation and Applied Biosystems, LLC*

-16-

1

## CERTIFICATE OF SERVICE

2

The undersigned certifies that a true and correct copy of Plaintiffs' Motion for Sanctions

3
for Violation of Protective Order and its Proposed Order has been served on the below identified
counsel of record via electronic mail on February 27, 2012:

4
Winstol D. Carter, Jr.                          Ahren Christian Hsu-Hoffman

5
Morgan Lewis & Bockius                          Morgan Lewis & Bockius LLP
1000 Louisiana Street                           2 Palo Alto Square

6
Suite 4000                                      3000 El Camino Real, Suite 700
Houston, TX 77002                               Palo Alto, CA 94306

7
Tel: (713) 890-5000                             Tel: (650) 843-7250
Fax: (713) 890-5001                             Fax: (650) 843-4001

8
wcarter@morganlewis.com                         ahoffman@morganlewis.com

9
Clay Erik Hawes                                 Daniel Johnson, Jr.
Morgan Lewis & Bockius                          Morgan Lewis & Bockius LLP

10
1000 Louisiana Street                           2 Palo Alto Square
Suite 4000                                      3000 El Camino Real, Suite 700

11
Houston, TX 77002                               Palo Alto, CA 94306
Tel: (713) 890-5165                             Tel: (650) 843-7554

12
Fax: (713) 890-5001                             Fax: (650) 843-4001
ehawes@morganlewis.com                          djjohnson@morganlewis.com

13
I. Clay Rogers                                  Joseph Song

14
Morgan Lewis & Bockius                          Morgan Lewis & Bockius LLP
1000 Louisiana Street                           One Market Spear Tower

15
Suite 4000                                      San Francisco, CA 94105
Houston, TX 77002                               Tel: (415) 442-1000

16
Tel: (713) 890-5144                             Fax: (415) 442-1001
Fax: (713) 890-5001                             joseph.song@morganlewis.com

17
crogers@morganlewis.com

18
Rita E. Tautkus
Morgan Lewis & Bockius LLP

19
One Market Spear Tower
San Francisco, CA 94105

20
Tel: (415) 442-1000
Fax: (415) 442-1001

21
rtautkus@morganlewis.com

22
*Attorneys for Defendants Biosearch Technologies, Inc., and Eurofins MWG Operon, Inc.*

23
Nicole Therese LeBoeuf
Shackelford Melton & McKinley - Dallas

24
3333 Lee Parkway
10th Floor

25
Dallas, TX 75219
Tel: (214) 780-1400

26
nleboeuf@shacklaw.net

27
*Attorney for Defendant Bio-Synthesis, Inc.*

28

-17-                    LIFE TECH'S MOTION FOR SANCTIONS
                        CASE NO. 3:12-cv-00852-JSW

1  I declare under penalty of perjury that the foregoing is true and correct.   Executed by me on this

2  27th day of February 2012.

3

4  Cora L. Schmid  (State Bar No. 237267)
   cschmid@helixip.com
5  HELIXIP LLP
   400 Seaport Court, Suite 105
6  Redwood City, CA  94063-2799
   Telephone:      (650) 241-0194
7  Facsimile:      (650) 362-1802

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIFE TECH'S MOTION FOR SANCTIONS
CASE NO. 3:12-cv-00852-JSW