Edward W. Goldstein (*Pro Hac Vice*)
egoldstein@gliplaw.com
Alisa Anne Lipski (State Bar No. 278710)
alipski@gliplaw.com
GOLDSTEIN & LIPSKI LLP
1177 West Loop South, Suite 400
Houston, TX 77027
Telephone: (713) 877-1515
Facsimile: (713) 877-1145

Cora L. Schmid (State Bar No. 237267)
cschmid@helixip.com
HELIXIP LLP
400 Seaport Court, Suite 105
Redwood City, CA 94063-2799
Telephone: (650) 241-0194
Facsimile: (650) 362-1802

Katherine Nolan-Stevaux (State Bar No. 244950)
katherine.nolan-stevaux@lifetech.com
LIFE TECHNOLOGIES CORP.
850 Lincoln Centre Drive
Foster City, CA 94404
Telephone: (650) 554-3584
Facsimile: (650) 554-2885

*Attorneys for Plaintiffs Life Technologies Corp.
and Applied Biosystems, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LIFE TECHNOLOGIES CORPORATION, and APPLIED BIOSYSTEMS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>BIOSEARCH TECHNOLOGIES, INC., BIO-SYNTHESIS, INC., and EUROFINS MWG OPERON INC.,<br><br>Defendants. | Case No. 3:12-cv-00852-JSW (JCS)<br><br>**PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR SANCTIONS FOR VIOLATION OF PROTECTIVE ORDER**<br><br>Date: April 27, 2012<br>Time: 9:30 a.m.<br>Place: Courtroom G, 15th Floor<br>Judge: Hon. Joseph C. Sperro |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 1

    A. Morgan Lewis And Biosearch Do Not Contest That They Violated Court Orders. ..................................................................................................................... 1

    B. Morgan Lewis And Biosearch Do Not Contest That This Motion Is Governed By Eastern District of Texas Law. ......................................................... 2

    C. Sanctions For Morgan Lewis's And Biosearch's Violations Are Warranted ........ 3

        1. *Armored Group* Does Not Support Denying Sanctions In This Case ........ 3

        2. Morgan Lewis And Biosearch Do Not Contest That Rule 37(b) Sanctions Are Warranted.. ................................................................................ 5

        3. Sanctions Are Also Warranted Under The Court's Inherent Authority. ................................................................................................... 6

        4. Arguments Regarding Whether Life Tech's Designations Are Proper And Whether Life Tech Has Been Injured Are Irrelevant ............. 7

            a. Morgan Lewis Cannot Unilaterately Determine What Materials Deserve Court Ordered Protection. ............................... 7

            b. Life Tech Is Not Required To Prove Competitive Harm ................ 8

    D. Each Of Life Tech's Requested Sanctions Is Warranted ........................................ 9

        1. Mr. Mann And Mr. Johnson Should Be Subject To The Stipulated Protective Order's Prosecution Bar. ............................................................ 9

            a. Mr. Johnson ..................................................................................... 9

            b. Mr. Mann ...................................................................................... 10

        2. Mr. Mann And Mr. Johnson Should Be Precluded From Further Access to Life Tech's Designated Information. ......................................... 11

            a. Visto Is A Highly Analogous Case, Which Directs Barring Messrs. Mann And Johnson From Further Access To Protected Materials. ....................................................................... 11

            b. Barring Access To Life Tech's Protected Information Is Necessary And Is Not A De Facto Disqualification ..................... 12

        3. Drs. Larry And Laura Parkhurst Should Be Precluded From Testifying in This Case.. ............................................................................ 14

        4. Biosearch Should Pay Life Tech's Costs of Enforcing P.R. 2-2 And The Stipulated Protective Order. ............................................................. 15

IV. CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

# TABLE OF AUTHORITIES

**CASES**                                                   **PAGE**

*Allergan, Inc., v. Hi-Tech Pharm. Co., Inc.*,
   No. 2:09-cv-97, No. 2:09-cv-182, No. 2:09-cv-348, No. 2:10-cv-200,
   2011 U.S. Dist. LEXIS 69429 (E.D. Tex. June 28, 2011) ............................................. 5, 14-15

*Armored Group, LLC v. Supreme Corp.*,
   CV 09-414-PHX-NVX, 2010 U.S. Dist. LEXIS 21822 (D. Ariz. Feb. 22, 2010) ............. 3-5, 8

*Brocade Communs. Sys. v. A10 Networks, Inc.*,
   10-CV-03428-LHK, 2011 U.S. Dist. LEXIS 99932 (N.D. Cal. Sept. 6, 2011) ..................... 5, 8

*Chilcutt v. United States*,
   4 F.3d 1313 (5th Cir. 1993) ....................................................................................................... 5

*Gonzalez v. Trinity Marine Group, Inc.*,
   117 F.3d 894 (5th Cir. 1997) ..................................................................................................... 6

*Ibarra v. Sunset Scavenger Co.*,
   No. C 01 2875 SI, 2003 U.S. Dist. LEXIS 8711 (N.D. Cal. May 20, 2003) ......................... 15

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*,
   283 F.3d 282 (5th Cir. 2002) .................................................................................................. 2, 6

*Smith v. Legg (In re United Mkts. Int'l)*,
   24 F.3d 650 (5th Cir. 1994) ....................................................................................................... 6

*Trenado v. Cooper Tire & Rubber Co.*,
   274 F.R.D. 598 (S.D. Tex. 2011) ............................................................................................. 5

*United States v. $ 49,000 Currency*,
   330 F.3d 371 (5th Cir. 2003) ..................................................................................................... 5

*United States v. National Medical Enterprises, Inc.*,
   792 F.2d 906, 910-11 (9th Cir. 1986) .................................................................................... 5-6

*U.S. Steel Corp. v. U.S.*, 730 F.2d 1465 (Fed. Cir. 1984) ........................................................... 11

*Visto Corp. v. Seven Networks, Inc.*, No. 2:03-CV-333-TJW,
   2006 U.S. Dist. LEXIS 91453 (E.D. Tex. Dec. 19, 2006) ....................................... 2, 8, 11, 12


**STATUTES**                                             **PAGE**

28 U.S.C. § 1927 ............................................................................................................................ 3

Federal Rule of Civil Procedure 11 ............................................................................................... 3

Federal Rule of Civil Procedure 37(b) .............................................................................. 3, 5-6, 15

## I. INTRODUCTION

The facts here are undisputed. Defendant Biosearch Technologies Inc. ("Biosearch") and its counsel Morgan, Lewis & Bockius LLP ("Morgan Lewis") admit they violated protective orders in this case. First, Morgan Lewis sent 2,963 pages of designated, proprietary scientific laboratory notebooks to competitive decision-makers at Biosearch. Second, Morgan Lewis and Biosearch never informed Life Tech of the violation, even though they were obligated to do so long before Life Tech discovered the violation. Finally, Morgan Lewis' and Biosearch's representations that the unauthorized individuals at Biosearch no longer had access to Life Tech's materials and that the materials had not been sent to non-parties both ultimately proved false.

Nonetheless, Morgan Lewis and Biosearch contend that their violations of court orders should go unpunished because (1) their violations were not in bad faith, (2) Life Tech's laboratory notebooks were not properly designated, and (3) Mr. Johnson had no idea his colleagues had proposed the immediate notification upon improper disclosure, in spite of his signature on the joint proposal. None of these *ex post* rationales can shield Morgan Lewis from sanctions. First, Morgan Lewis overlooks the relevant law – Federal Rule of Civil Procedure 37(b) as well as the Court's inherent authority under Fifth Circuit law. Second, the laboratory notebooks were properly, designated and even if they were not, Morgan Lewis could have challenged their designation but did not until they were caught red-handed. Finally, Mr. Johnson's ignorance of the immediate disclosure provision could only shield his actions before the Court entered the Protective Order; once it was entered, it was his duty to know what it required and comply with those requirements.

Accordingly, Life Tech respectfully requests that the Court enter the requested sanctions for Morgan Lewis' admitted violations of the Court's orders.

## II. ARGUMENT

### A. Morgan Lewis And Biosearch Do Not Contest That They Violated Court Orders.

Morgan Lewis and Biosearch do not dispute that they have engaged in multiple violations of court orders or engaged in self-help remedies for these violations in this matter:

- They do not dispute that they violated Eastern District of Texas Patent Rule ("P.R.") 2-2 by sending 2,963 pages designated "Outside Attorney's Eyes Only" to competitive decision makers at Biosearch. *Compare* Dkt. No. 256 at 6 *with* B Dkt. No. 273.

- They do not dispute that they followed-up their unauthorized disclosures with self-help that did not identify the full scope of the unauthorized disclosures and left designated documents with unauthorized recipients, rather than informing Life Tech or approaching the Court. *Compare* Dkt. No. 256 at 6-7 *with* Dkt. No. 273.

- They do not dispute that they violated the April 6, 2011 Protective Order by failing to notify Life Tech of the improper disclosure once that order was entered. *Compare* Dkt. No. 256 at 7-9 *with* Dkt. No. 273.

Morgan Lewis' and Biosearch's failure to dispute that they have violated these orders "constitute[s] clear and convincing evidence" of the violations. *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 291 (5th Cir. 2002). The only remaining questions are whether they should be sanctioned for their violations, and if so, what sanctions are appropriate.

**B.     Morgan Lewis And Biosearch Do Not Contest That This Motion Is Governed By Eastern District of Texas Law.**

Life Tech's requested sanctions are warranted under the governing law of the Eastern District of Texas. *See* Dkt. No. 256 at 5 n.4. While Morgan Lewis and Biosearch cite Ninth Circuit law, they do not contest that the law of the Eastern District of Texas governs this motion wherever that district's laws differ from the laws of this district. *See* Dkt. No. 273. They do not even suggest a reason why this Court should apply Ninth Circuit law instead of Eastern District of Texas law. *See id*. Morgan Lewis and Biosearch attempt unsuccessfully to distinguish ***only one*** of Life Tech's cases on the facts. Dkt. No. 273 at 5-8 (citing *Visto Corp. v. Seven Networks, Inc.,* No. 2:03-CV-333-TJW, 2006 U.S. Dist. LEXIS 91453, at *24-25 (E.D. Tex. Dec. 19, 2006)). But they do not attempt to critique or distinguish any of the other cases supporting sanctions that Life Tech cited.

It is thus uncontested that this motion is governed by the law of the Eastern District of

Texas – the Court whose orders were violated – wherever that law differs from the law of this district. It is likewise uncontested that Life Tech's opening brief accurately describes the standards for sanctions under Eastern District of Texas law.

### C. Sanctions For Morgan Lewis's And Biosearch's Violations Are Warranted.

Life Tech has moved for sanctions under two grounds: under Federal Rule of Civil Procedure 37(b) and under the inherent authority of the Court. Dkt. No. 256 at 5-6, 9-11. Sanctions are appropriate here under each of these independent grounds.

#### 1. *Armored Group* Does Not Support Denying Sanctions In This Case.

Morgan Lewis and Biosearch base their opposition almost entirely on *Armored Group, LLC v. Supreme Corp.*, CV 09-414-PHX-NVX, 2010 U.S. Dist. LEXIS 21822 (D. Ariz. Feb. 22, 2010), and that case's discussion of "bad faith." *See* Dkt. No. 273 at 1, 5-7, 12, 15. However, *Armored Group* does not involve the legal bases asserted in this motion. Moreover, the facts of *Armored Group* actually illustrate that the behavior here warrants sanctions.

*Armored Group* does not involve either of the two legal bases asserted here. First, neither the movant nor court in *Armored Group* raised Federal Rule of Civil Procedure 37(b), which Life Tech asserted in this motion. *See Armored Group*, 2010 U.S. Dist. LEXIS 21822, at *4-5 ("Armored Group has not specified pursuant to which source of authority it seeks sanctions, but [Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927] are inapplicable to the circumstances of this case, and therefore the Court will assume that Armored Group seeks sanctions pursuant to the Court's inherent authority."). Second, while *Armored Group* considers sanctions under the court's inherent authority, it does so under **the Ninth Circuit standard**, not under the Fifth Circuit standard that governs this motion. *Id*. In short, *Armored Group* applies different law.

Moreover, the facts of *Armored Group* actually illustrate by contrast how inappropriate Morgan Lewis attorneys Messrs. Daniel Johnson and Jeffry Mann's actions were, and why sanctions are warranted here. First, the violating attorney in *Armored Group* shared a deposition transcript that did not carry a designation on its face **because it was designated after the fact**. *Id*. at *3. In contrast, here, Mr. Mann shared 2,963 pages of documents each prominently labeled

"Outside Attorneys' Eyes Only." Schmid Decl. at ¶ 5.[1] Second, *Armored Group* did not involve attorneys who hid an unauthorized disclosure from the producing party. Rather, the violating attorney in *Armored Group* learned of the unauthorized disclosure ***after*** the producing party learned of it. *Armored Group*, 2010 U.S. Dist. LEXIS 21822, at *3-4. In contrast, Messrs. Johnson and Mann learned of this unauthorized disclosure well over a year before Life Tech did and chose not to inform Life Tech for this entire time period.[2] *See* Schmid Decl. at ¶ 9, 14-15. In fact, it is undisputed that the April 6, 2011 Protective Ordered required them to do so for at least half a year of that period – itself a separate protective order violation that did not happen in *Armored Group*. *See* Dkt. No. 256 at 8; *Armored Group*, 2010 U.S. Dist. LEXIS 21822. Finally, each of the parties who received the unauthorized disclosures in *Armored Group* (including third parties) "submitted affidavits confirming that they ha[d] destroyed all electronic and hard copies of the transcript, including all notes and summaries," on January 21, 2010, the day the violating attorney realized violation had occurred, one day after the violation itself. *Armored Group*, 2010 U.S. Dist. LEXIS 21822, at *3-4, *5-6. Here, depositions established that protected documents were still in the possession of unauthorized individuals ***a year and a half*** after Morgan Lewis and Biosearch realized that the violation had occurred. Ex. E at 28:24-29:4, 30:24-31:5. In fact, Morgan Lewis and Biosearch have still not provided affidavits or testimony that the other unauthorized recipients (Biosearch's Ms. Yasmine Lancaster and non-parties Dr. Larry Parkhurst and Mr. Jeff Oster) have returned or destroyed all copies without further distribution.

In short, *Armored Group* does not address the legal bases asserted here. It also did not involve the unrepentant post-violation behavior displayed here. *Armored Group* only highlights

---

[1] "Schmid Decl." refers to the February 27, 2012 Declaration of Cora L. Schmid in Support of Plaintiffs' Motion for Sanctions for Violation of Protective Order, Dkt. No. 262, and "Schmid Reply Decl." refers to the co-filed March 19, 2012 Declaration of Cora L. Schmid in Support of Plaintiffs' Motion for Sanctions for Violation of Protective Order.

[2] Morgan Lewis emphasizes that the attorneys aware of the unauthorized disclosure "were not involved in the negotiations regarding the proposed protective order," and that the attorney who prepared the draft of the protective order was not aware that the notebooks had been disclosed to Biosearch at that time. Dkt No. 273 at 11. But they do not dispute that Mr. Johnson signed the proposed protective order – containing all relevant language regarding unauthorized disclosures – less than a month after Mr. Johnson learned of the unauthorized disclosure. *See* Dkt. No. 104.

1 the egregiousness of Morgan Lewis's and Biosearch's behavior.

2 **2. Morgan Lewis And Biosearch Do Not Contest That Rule 37(b) Sanctions Are Warranted.**
3

4 One ground under which Life Tech sought sanctions is Federal Rule of Civil Procedure 37(b). *See* Dkt. No. 256 at 5 ("[c]ourts may sanction violations of protective orders under . . . Federal Rule of Civil Procedure 37(b)"), 9 ("For discovery violations 'a district court has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct."). Biosearch's opposition ***entirely ignored Rule 37***. *See* Dkt. No. 273. Not a single one of its cited cases applies Rule 37. Hence, Morgan Lewis and Biosearch implicitly admit sanctions for protective order violations are warranted here under Rule 37. *See* Dkt. No. 273.

Morgan Lewis and Biosearch's ***sole*** defense to the imposition of sanctions is their assertion that there was no "bad faith or willful misconduct." *Id.* at 5-6. But neither the Eastern District of Texas nor the Northern District of California require a finding of bad faith or willfulness for Rule 37 sanctions less severe than dismissal or default. Morgan Lewis did not challenge Life Tech's cases on this point. *Compare* Dkt. No. 256 at 9 (citing *Trenado v. Cooper Tire & Rubber Co.*, 274 F.R.D. 598, 600 (S.D. Tex. 2011) (discussing Rule 37 sanctions)); *see also Chilcutt v. United States*, 4 F.3d 1313, 1322 (5th Cir. 1993) ("this Court has never held that willful or contumacious conduct is a prerequisite to sanctions which are less harsh than a dismissal or default judgment") *with* Dkt. No. 273.[3] Northern District of California law agrees with this analysis. *Brocade Communs. Sys. v. AJO Networks, Inc.*,10-CV-03428-LHK, 2011 U.S. Dist. LEXIS 99932, at *4-5, *11-14 (N.D. Cal. Sept. 6, 2011) (awarding sanctions for protective order violation under Rule 37 without a finding of bad faith or willfulness); *United States v. National Medical Enterprises, Inc.*, 792 F.2d 906, 910-11 (9th Cir. 1986) (affirming sanctions for protective order violation under Rule 37 with no requirement of bad faith or willfulness). It is

---

[3] Life Tech's cited case *Allergen* does not contradict this. While *Allergen* states that under Rule 37, "the penalized party's discovery violation must be willful," *Allergan, Inc., v. Hi-Tech Pharm. Co., Inc.*, No. 2:09-cv-97, No. 2:09-cv-182, No. 2:09-cv-348, No. 2:10-cv-200, 2011 U.S. Dist. LEXIS 69429, *16 (E.D. Tex. June 28, 2011), this statement relies on a Fifth Circuit case that specifically explains such a criteria applies "where a district court awards ***default judgment*** as a discovery sanction," *United States v. $ 49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003)).

-5- LIFE TECH'S REPLY RE MOT. FOR SANCTIONS
CASE NO. 3:12-cv-00852-JSW (JCS)

thus undisputed that Rule 37(b) applies and directs sanctions for Morgan Lewis' and Biosearch's violations.

### 3. Sanctions Are Also Warranted Under The Court's Inherent Authority.

Life Tech also based its motion on the Court's inherent authority to grant sanctions. While Morgan Lewis and Biosearch attempt to address this ground, they look at the wrong law, only looking at inapplicable "Ninth Circuit precedent." Dkt. No. 273 at 6 (citation omitted). Moreover, Morgan Lewis attempts unsuccessfully to distinguish only one of Life's cited cases on this topic on factual grounds rather than legal grounds. *Id.* They simply have not challenged that the Eastern District of Texas only requires willfulness for sanctions as severe as a dismissal or default. *Smith v. Legg (In re United Mkts. Int'l)*, 24 F.3d 650, 654 (5th Cir. 1994) ("Striking a defendant's answer and denying a request to replead is ***equally as harsh a sanction as dismissal*** of a plaintiff's case with prejudice, and . . . [t]he Fifth Circuit has confined ***such sanctions*** under the district court's inherent power to instances of bad faith or willful abuse of the judicial process.") (emphasis added); *Gonzalez v. Trinity Marine Group, Inc.*, 117 F.3d 894, 898 (5th Cir. 1997) (quoting same). Morgan Lewis and Biosearch have not identified any Fifth Circuit authority indicating that bad faith is required sanctions other than dismissal of a case. *See* Dkt. No. 273.

Instead, the Fifth Circuit directs that a court may exercise its inherent power to impose sanctions less severe than dismissal wherever it finds "(1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order" – with no requirement for subjective intent. *See* Dkt. No. 256 at 6 (citing *Lyn-Lea*, 283 F.3d at 291.[4] The Fifth Circuit has explicitly affirmed sanctions where there was an "inadvertent violation" of a protective order. *Lyn-Lea*, 283 F.3d at 290. Because Morgan Lewis failed to address this governing standard, it implicitly admits its actions warrant sanctions. *Compare* Dkt. No. 256 at 6 *with* Dkt. No. 273.

---

[4] Many cases sanctioning protective order violations in the Fifth Circuit do not explicitly discuss the source of authority under which they are granting sanction, implying that the sanctions derive from their inherent power. *See Lyn-Lea*, 283 F.3d at 291.

### 4. Arguments Regarding Whether Life Tech's Designations Are Proper And Whether Life Tech Has Been Injured Are Irrelevant.

Morgan Lewis and Biosearch argue that "Life Tech has not once explained in its Motion how 16-20 year-old notebooks . . . deserve an AEO designation,"[5] and that "Life Tech has not identified any prejudice or other injury suffered from the disclosure." Dkt. No. 273 at 8-11. These issues are red herrings.

#### a. Morgan Lewis Cannot Unilaterally Determine What Materials Deserve Court Ordered Protection.

Morgan Lewis and Biosearch have not identified authority to support that a violation of a protective order is excused if the materials were improperly designated. *See* Dkt. No. 273 at 6-8. They did not even try to rebut Life Tech's contrary authority. *See* Dkt. No. 256 at 10. Their insistence that their behavior is excused on this basis only illustrates why sanctions are necessary here. The decision over whether Life Tech's designated materials are entitled to protection is simply not a decision that Morgan Lewis and Biosearch can unilaterally make. The Protective Order provides a process through which Biosearch may first raise the issue with Life Tech and then, if it is still not satisfied, with the Court. Dkt. No. 174 at Section 4b. Life Tech is prepared to fully brief the factual and legal bases for its confidentiality designation of these notebooks should a challenge to Life Tech's designations be filed. But such a motion has not been filed.[6] In fact, it is particularly telling here that Biosearch never questioned the designation of the notebooks until after Life Tech raised the issue of Morgan Lewis and Biosearch's violations – well over a year after the documents were produced.

The issue of whether the notebooks are properly designated is simply not before this

---

[5] The fact that Biosearch produced the documents back to Life Tech bearing not only Life Tech's confidentiality designation, but also Biosearch's independent designation of "Highly Confidential – Outside Attorney's Eyes Only" belies its arguments.

[6] Morgan Lewis and Biosearch have requested that Life Tech down-designate the deposition of one of the inventors, Dr. Kenneth Livak, along with two of Dr. Livak's lab notebook that were used as exhibits in that deposition. Schmid Reply Decl. at ¶ 3. To date, they have not requested a meet and confer with lead counsel, they have not requested down-designation of any of the other laboratory notebooks, including the page from Dr. Susan Flood's notebook that Biosearch sent to non-party Jeff Oster. *See id.*

1  Court. *Visto*, 2006 U.S. Dist. LEXIS 91453, at *24-25 ("a lawyer operating under the terms of a
2  Protective Order issued by this court has no right to resort to self-help"); *Brocade*, 2011 U.S.
3  Dist. LEXIS 99932, *14 ("It is not up to the party filing a document containing information
4  designated as confidential by the other party to make a subjective decision about whether the
5  designation is accurate. That decision is for the court to make." The violating party "should have
6  respected [the producing party's] designation, even if it did not agree.") Life Tech designated the
7  notebooks under the provisions of the Eastern District of Patent Local Rules and Morgan Lewis
8  and Biosearch had a duty to abide by that designation. Morgan Lewis' questioning of the
9  designation of the materials at issue is simply an effort after the fact to distract the Court from its
10 violations.

**b.     Life Tech Is Not Required To Prove Competitive Harm.**

12 Similarly, Morgan Lewis and Biosearch's argument that Life Tech cannot enforce the
13 Court's Protective Orders until Life Tech has proof that the unauthorized disclosure caused
14 competitive harm to Life Tech is legally unsupported. Morgan Lewis and Biosearch have not
15 attempted to rebut the substantial authority Life Tech cited in which Courts have imposed
16 sanctions to enforce protective orders without requiring any proof that the inappropriately
17 disclosed material actually resulted in competitive harm. *See* Dkt. No. 256 at 5-6, 9-11. Instead,
18 Morgan Lewis and Biosearch base their argument on this point entirely on *Armored Group*,
19 which, as discussed above, involves different legal standards than the Fifth Circuit. *See Armored*
20 *Group*, 2010 U.S. Dist. LEXIS 21822, at *4-5. Given the large amount of Highly Confidential
21 information which Life Tech has produced and in light of the amount of repeated questioning Life
22 Tech has had to employ to even learn the scope of the unauthorized disclosures here, Life Tech
23 should not have to wait for further disclosures or for evidence of competitive harm to protect the
24 information it has produced in this litigation. Nor are Life Tech's concerns about its proprietary
25 information reaching an individual who has publicly called Life Tech a "favorite target[]" and
26 sued Life Tech unreasonable. *Compare* Schmid Decl. at ¶ 8 *with* Dkt. No. 273 at 10.

27 The Court should reject Morgan Lewis's and Biosearch's implications that they are the
28 arbiter of whether Life Tech's materials are entitled to protection and that their violations of court

-8-   LIFE TECH'S REPLY RE MOT. FOR SANCTIONS
CASE NO. 3:12-cv-00852-JSW (JCS)

1  orders are excused because Life Tech has not proved competitive harm to date. Sanctions are
2  warranted here, and the only remaining question is which sanctions the Court should impose.

3         **D.    Each Of Life Tech's Requested Sanctions Is Warranted.**

4 As discussed above, sanctions are warranted for the multiple protective order violations.
5 Moreover, when Life Tech learned of the violations and sought to enforce the protective orders in
6 this case, Morgan Lewis and Biosearch gave incomplete answers and information which proved
7 to be false when Life Tech engaged in further discovery. In the light most favorable to Morgan
8 Lewis and Biosearch, they did not view the violations of the Court orders as meriting a thorough
9 investigation. In the face of such unapologetic protective order violations, multiple sanctions are
10 warranted. Morgan Lewis and Biosearch have not disputed the majority of cases cited by Life
11 Tech in support of the specific sanctions, and Life Tech reiterates its reliance upon that authority.
12 *Compare* Dkt. No. 256 at 9-11 *with* Dkt. No. 273.

13         **1.    Mr. Mann And Mr. Johnson Should Be Subject To The Stipulated Protective Order's Prosecution Bar.**
14

15         **a.    Mr. Johnson.**

16 Morgan Lewis and Biosearch assert that Life Tech's request that Mr. Johnson sign the
17 same patent prosecution bar that several Life Tech attorneys have been required to sign is
18 "nonsense" because Mr. Johnson "is not a patent prosecutor or admitted to practice before the
19 U.S. Patent and Trademark Office." Dkt. No. 273 at 11. But the Court did not take such factors
20 into consideration when ordering Life Tech's attorneys to sign this patent prosecution bar. *See*
21 Dkt. No. 172 at 3-5. In fact, in its April 6, 2011 Protective Order, the Court ordered Life Tech's
22 attorney Ms. Cora Schmid, who at that time was "Litigation Counsel" with Life Tech, to be
23 subject to the patent prosecution bar. Dkt. No. 174 at 10-11. Like Mr. Johnson, Ms. Schmid is
24 not admitted to the U.S. Patent and Trademark Office. Schmid Decl. at ¶ 2. If signing the patent
25 prosecution bar will have no impact on Mr. Johnson's practice, it is unclear why he is unwilling
26 to sign it.

27 Morgan Lewis and Biosearch argue that "Life Tech does not – and cannot – explain how
28 Mr. Johnson's efforts to claw back inadvertently disclosed documents could make him a risk for

1  affirmatively using Life Tech's documents to prosecute patents." Dkt. No. 273 at 11.  But Mr.
2  Johnson's "efforts to claw back" documents don't create the risk – Mr. Johnson's undisputed
3  protective order violations and repeated incomplete and incorrect responses when Life Tech
4  approached him about these violations creates the risk.  Mr. Johnson should be subjected to the
5  same bar to which some of Life Tech's counsel are already subject.

### b. Mr. Mann.

7  Mr. Mann should also be required to sign the patent prosecution bar.  Morgan Lewis and
8  Biosearch make three arguments that Mr. Mann should not, but all fail.  First, they argue that no
9  sanctions can be awarded because "[t]here is no evidence of any bad faith."  Dkt. No. 273 at 12.
10  But as explained more completely above, this is not correct under the applicable standards.

11  Second, Morgan Lewis and Biosearch argue that "[a]n inadvertent disclosure of
12  documents to a client is very different from affirmatively using confidential information for
13  prosecution-related work," but provide no explanation of the distinction.  This argument ***directly
14  contradicts Biosearch's earlier arguments to the Court*** that Life Tech in-house counsel who
15  "prosecuted various patents concerning the technology-at-issue in this case . . . could potentially
16  use Biosearch['s] highly confidential technological information, ***even inadvertently***, to strengthen
17  Plaintiff's intellectual property portfolio."  Dkt. No. 104 at 11 n.2 (quotation omitted) (emphasis
18  added).  Morgan Lewis and Biosearch do not attempt to explain their sudden change in position.
19  In light of Mr. Mann's violation of Life Tech's confidential information, the risk he may likewise
20  inadvertently misuse information he learned Life Tech's protective materials are protected while
21  prosecuting patents for Biosearch is too great.

22  Finally, Morgan Lewis and Biosearch claim that because Life Tech did not previously ask
23  Mr. Mann to sign a patent prosecution bar "reveals that Life Tech did not believe that Mr. Mann's
24  work for Biosearch was related to the patents-in-suit."  Dkt. No. 273 at 12.  This assertion is
25  contradicted by the record.  Life Tech explicitly represented that "Attorneys at Morgan Lewis
26  have been directly involved in discussions with Plaintiffs ***while also actively prosecuting patents
27  for Defendant Biosearch related to the technology-at-issue***," and specifically asked that Morgan
28  Lewis attorneys be subjected to any patent prosecution bar the Court chose to impose on Life

Tech's in-house attorneys. Dkt. No. 104-1 at 11 n.2. While the Court denied Life Tech's previous request, Morgan Lewis attorneys who have violated the protective orders should now be subject to the same restrictions as Life Tech's attorneys who have not. *See U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1469 (Fed. Cir. 1984) (vacating an order denying access to in-house counsel because it is improper to deny access "to in-house counsel solely on the presumption that inadvertent disclosure by the latter is more likely.").

Like Mr. Johnson, Mr. Mann should now be required to sign the same patent prosecution bar that several of Life Tech's attorneys have already signed.

### 2. Mr. Mann And Mr. Johnson Should Be Precluded From Further Access to Life Tech's Designated Information.

#### a. *Visto* Is A Highly Analogous Case, Which Directs Barring Messrs. Mann And Johnson From Further Access To Protected Materials.

*Visto* is highly analogous case that demonstrates that barring Messrs. Mann and Johnson from further access to Life Tech's confidential information is an appropriate remedy. Morgan Lewis and Biosearch claim that "Mr. Johnson's actions of clawing back the notebooks are nothing like the 'self-help' acts described in *Visto*," but provide no explanation of the difference. Dkt. No. 273 at 13. In fact, Mr. Johnson's and Mr. Mann's actions – actions including ***failing*** to claw back as required by the protective order ***and misinforming*** Life Tech about that failure – are highly analogous to the sanctioned actions in *Visto*, 2006 U.S. Dist. LEXIS 91453.

Morgan Lewis and Biosearch have not denied that they had an obligation to notify Life Tech at least on April 6, 2011, the day the Stipulated Protective Order was entered, of the unauthorized disclosure and to "mak[e] every reasonable effort" to retrieve any materials that were so disclosed. Dkt. No. 174 at 4. But just as the attorney in *Visto* unilaterally redacted an expert report herself rather than approach the other side, Messrs. Mann and Johnson selected a unilateral response without telling Life Tech.

Further, when the producing party objected to the disclosures in *Visto*, Visto produced undertakings signed by the recipients, but the undertakings were undated, and, it turned out had not been signed until after the unauthorized disclosures. *Visto*, 2006 U.S. Dist. LEXIS 91453, at

-11- LIFE TECH'S REPLY RE MOT. FOR SANCTIONS
CASE NO. 3:12-cv-00852-JSW (JCS)

1  *24. Similarly, when Life Tech raised the issue of the unauthorized disclosure here, Morgan Lewis and Biosearch assured Life Tech that the materials had not been sent to non-parties, and that all protected materials had been clawed back – both of which Life Tech later discovered were not correct. *Compare* Ex. C[7] at 2 *and* Ex. D at 1 *with* Ex. E at 52:17-53:19, 56:12-57:22.

Morgan Lewis and Biosearch now state that these representations are excusable because "Biosearch and the Morgan Lewis attorneys believed this statement was accurate at the time." Dkt. No. 273 at 14. This is, at best, an admission of an incomplete investigation in response to Life Tech's questions about the unauthorized disclosure. *See* Ex. P at 3 (requesting that Mr. Johnson "[d]etail what steps you have taken . . . including retrieving every electronic or hard copy . . . made from the initial unauthorized disclosure and securing the agreement of every individual who improperly accessed the materials that they will no longer distribute or discuss the contents of the Livak notebooks," and "[d]isclose all facts regarding who had access to the Livak notebooks at Biosearch after they were provided to Ron Cook in June 2010, when they had access to them, who they shared the documents with, [and] what they did with the documents"); Ex. Q (reiteration of questions regarding third party access).

Morgan Lewis and Biosearch's self-help remedy to their initial violation and their inaccurate representations once Life Tech learned of the violations is highly analogous to the unrepentant attitude of the *Visto* attorney who was barred from further receipt of confidential information. The same sanction is thus warranted here.

### b. Barring Access To Life Tech's Protected Information Is Necessary And Is Not A De Facto Disqualification.

Morgan Lewis and Biosearch argue that Mr. Mann and Mr. Johnson should continue to access Life Tech's highly confidential information in this case because this requested sanction "is effectively a request that Messrs. Johnson and Mann be disqualified from the case." Dkt. No.

---

[7] Unless otherwise noted, cited Exhibits A - FF refer to those of the February 27, 2012 Declaration of Cora L. Schmid in Support of Plaintiffs' Motion for Sanctions for Violation of Protective Order, and cited Exhibits GG - II refer to those of the March 19, 2012 Declaration of Cora L. Schmid in Support of Plaintiffs' Reply to Opposition to Motion for Sanctions for Violation of Protective Order.

-12-  LIFE TECH'S REPLY RE MOT. FOR SANCTIONS
CASE NO. 3:12-cv-00852-JSW (JCS)

1  273, at 13. This is not a reason to refuse this sanction and is not true.

2  First, any hardship that defendants may suffer as a result of proper sanctions is
3  outweighed by the necessity of enforcing Court orders and protecting Life Tech's confidential
4  information. Indeed, the Court has already recognized that protection of confidential information
5  in this matter warrants restrictions on which attorneys may access that information by only
6  permitting Life Tech in-house attorneys who are willing to sign a patent prosecution bar access to
7  protected materials. *See* Dkt. No. 172 at 3-5.

8  Second, denying access to protected information is not a de facto disqualification, and
9  both attorneys could continue to be centrally involved in much of the case. The fundamental
10 issue of this case is whether the defendants infringe Life Tech's products – a question that will
11 center on each defendant's information rather on Life Tech's. Protecting Life Tech's information
12 will not prevent Mr. Mann and Mr. Johnson from analyzing whether their clients' products meet
13 the elements of Life's public patents. Likewise, Biosearch's asserted defenses center on
14 Biosearch's claims that publications or third party material invalidates Life Tech's patents. *See*
15 Ex. K. Participation in such arguments is not precluded for those who cannot access Life Tech's
16 proprietary information. To the extent there are pieces of the case that those without access to
17 Life Tech's confidential information cannot fully participate in, any harm in barring participation
18 in those areas of the case is outweighed by the enforcement of court orders and the protection of
19 Life Tech's confidential information. Potential harm to Morgan Lewis' clients is mitigated by the
20 fact that Morgan Lewis is a large firm with many competent attorneys, and has already involved
21 many different attorneys on this case. Because this sanction is not a disqualification, Morgan
22 Lewis' and Biosearch's cases regarding disqualification are irrelevant here. Dkt No. 273 at 13.

23 As Morgan Lewis and Biosearch's own authority illustrates, Messrs. Johnson and Mann
24 have not only violated court orders, they have failed to treat unauthorized disclosures with the
25 gravity of which they are entitled. Life Tech's documents should now be protected from any
26 further access by Messrs. Johnson and Mann.

27
28

### 3. Drs. Larry And Laura Parkhurst Should Be Precluded From Testifying in This Case.

Morgan Lewis and Biosearch make two arguments opposing preclusion of testimony by the Parkhursts. Dkt. No. 273 at 14-15. Both are flawed. First, Morgan Lewis and Biosearch argue that preclusion is unnecessary because the Parkhursts testified about their own work performed in the 1990's rather than Dr. Livak's work. *Id.* at 14. But as Morgan Lewis and Biosearch admit, they consider the Parkhursts' "work in the early 1990's" to be a "lynchpin to Defendants' invalidity defense," the dates of the Parkhursts' work relative to Dr. Livak's work is highly relevant. Dkt. No. 273 at 15. In fact, in January of 2010, Dr. Cook wrote to Dr. Parkhurst that viewed one of the patents-in-suit "as invalid for a number of reasons, not the least of which is your seminal work in the early 90's which we regard as ***undisclosed prior art***," and offering to pay him $300/hour to help Biosearch develop this invalidity evidence. Ex. HH. In other words, Dr. Parkhust had an interest in establishing that his work pre-dated Dr. Livak's work.

In fact Dr. Cook commented that the excerpt from the Livak notebook would have a large impact on Dr. Parkhurst, noting that "[t]his may prove hard for Larry to read!!" Ex. E at 42:10-43-24; *see also* Ex. J. Shortly thereafter, Mr. Beal sent that excerpt to Larry Parkhurst. Ex. G at 10:21-11:17. The next Monday, June 14, 2010, Mr. Beal met with Dr. Parkhurst for an all-day meeting, in which Dr. Parkhurst later testified they "tr[ied] to jog my memory of if there was anything else after these – whatever it is, almost 20 years." Ex. II, at 210:25 -211:10. Biosearch has not denied, a person who has seen some of these notebook pages "can't erase the understanding of when Livak did his work," and such knowledge may have "even inadvertently" colored Dr. Parkhurst's invalidity testimony. *See* Dkt. No. 256 at 15.

Morgan Lewis and Biosearch argue, without citing any authority, that the Parkhursts' testimony should not be excluded "because precluding their testimony would significantly prejudice Defendants' invalidity defense." Dkt. No. 273 at 15. But they notably ignore the Life Tech's cited authority that demonstrates that such considerations are not dispositive. *See* Dkt. No. 256 at 10-11. Those cases show that neither impact of the disclosures on testimony nor prejudice to the violating party is dispositive regarding precluding testimony. *Id.* To the

contrary, cases in both the Eastern District of Texas and the Northern District of California have struck testimony for failing to comply with a productive order. *Allergan*, 2011 U.S. Dist. LEXIS 69429, at *13-14, 18 (striking an expert report and precluding the expert from testifying where a party inadvertently failed to properly disclose the expert under the protective order despite the inadvertence of the violation at issue because Defendants "failed to provide a legitimate reason for violating the Protective Order . . . [and] condoning Defendants' 'inadvertent oversight' would undermine the Court's integrity and ability to enforce its own rules."); *Ibarra v. Sunset Scavenger Co.*, No. C 01 2875 SI, 2003 U.S. Dist. LEXIS 8711, at *30-31 (N.D. Cal. May 20, 2003) (striking a section of a declaration for a protective order violation).

"Defendants have failed to provide a legitimate reason for violating the Protective Order [by sending protected documents to Dr. Parkhurst] . . . [and] condoning Defendants' 'inadvertent oversight' would undermine the Court's integrity and ability to enforce its own rules." *Allergan*, 2011 U.S. Dist. LEXIS 69429, at 18. The Court should preclude both Parkhursts from testifying in this matter.

### 4. Biosearch Should Pay Life Tech's Costs of Enforcing P.R. 2-2 and the Stipulated Protective Order.

Under Rule 37, which Morgan Lewis and Biosearch have not contested applies:

> Instead of or in addition to the orders above, the court ***must*** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2(C) (emphasis added). Morgan Lewis and Biosearch have not claimed their violations were substantially justified, that other circumstances make an award of expenses unjust, or that Life Tech's fees are unreasonable. They should thus be required to reimburse Life Tech for the cost of enforcing these orders. *See* Schmid Reply Decl. at ¶ 4-6.

### III. CONCLUSION

For the reasons stated above, Life Tech respectfully requests the relief described above.

Dated: March 19, 2012                    Respectfully submitted,


                                                                 */s/ Cora Louise Schmid*

Edward W. Goldstein (*Pro Hac Vice*)
egoldstein@gliplaw.com
Alisa Anne Lipski (State Bar No. 278710)
alipski@gliplaw.com
GOLDSTEIN & LIPSKI LLP
1177 West Loop South, Suite 400
Houston, TX  77027
Telephone:    (713) 877-1515
Facsimile:      (713) 877-1145

Cora L. Schmid (State Bar No. 237267)
cschmid@helixip.com
HELIXIP LLP
400 Seaport Court, Suite 105
Redwood City, CA  94063-2799
Telephone:    (650) 241-0194
Facsimile:      (650) 362-1802

Katherine Nolan-Stevaux (State Bar No. 244950)
katherine.nolan-stevaux@lifetech.com
LIFE TECHNOLOGIES CORP.
850 Lincoln Centre Drive
Foster City, CA  94404
Telephone:    (650) 554-3584
Facsimile:      (650) 554-2885


*Attorneys for Plaintiffs Life Technologies Corporation and Applied Biosystems, LLC*