UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LIFE TECHNOLOGIES CORPORATION,
and APPLIED BIOSYSTEMS, LLC,

               Plaintiffs,

    v.

BIOSEARCH TECHNOLOGIES, INC.,
BIOSYNTHESIS, INC., and EUROFINS
MWG OPERON, INC.,

               Defendants.

_____/

Case No. C-12-00852 WHA (JCS)

**ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFFS'
MOTION FOR SANCTIONS [Docket No.
271]**

## I.    INTRODUCTION

On March 1, 2012, Plaintiffs Life Tech Technologies Corporation and Applied Biosystems,

LLC ("Life Tech") filed a Motion for Sanctions for Violation of Protective Order (the "Motion"),

alleging that two of Defendant Biosearch Technologies, Inc.'s ("Biosearch") attorneys at Morgan,

Lewis & Bockius LLP ("Morgan Lewis") violated multiple court orders.  Biosearch opposes the

Motion.  *See* Biosearch's Opposition to Plaintiff's Motion for Sanctions (the "Opposition").  On

Friday, April 27, 2012, at 9:00 a.m, a hearing was held on the Motion.  For the reasons stated below,

the Motion is GRANTED in part and DENIED in part.

## II.    BACKGROUND

### A.    Factual Background

The facts giving rise to the dispute are not contested. On May 28, 2010, pursuant to P.R. 3-1

of the Eastern District of Texas, Life Tech produced 2,963 pages of laboratory notebooks to

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

Biosearch's outside counsel.[1]  Each page of the production is designated "Outside Attorneys' Eyes Only" ("AEO").  On June 4, 2010, Jeffry Mann, Morgan Lewis patent prosecutor partner, forwarded to Dr. Ronald Cook, CEO of Biosearch, an email including embedded links to the inventor notebooks of the patents-in-suit.  Declaration of Jeffry Mann in Support of Biosearch's Opposition to Plaintiffs' Motion for Sanctions ("Mann Decl."), ¶ 2.  None of the other Morgan Lewis attorneys were aware that Mann sent the e-mail.  *Id.* at ¶ 3.

After receiving the email, Dr. Cook downloaded the notebooks and had them printed and placed in binders. Declaration of Cora L. Schmid in Support of Plaintiffs' Motion for Sanctions ("Schmid Decl.") Ex. E (Cook Depo.), 18:8-19, 21:13-20, 22:2-11.  Cook saved a copy of the notebooks on a "thumb drive" and provided the electronic copy of the notebooks to Biosearch employee Ben Sowers.[2]  *Id.* at 23:13-15.  On June 11, 2010, Cook excerpted four pages of Dr. Kenneth Livak's notebooks ("Livak Excerpts") and sent them in an e-mail in PDF format to Biosearch employee Marc Beal. Schmid Decl. Ex. J (June 11 Cook-Beal E-Mail) ("Find Livak eureka moment(s).  This may prove hard for [Biosearch's expert witness Dr. Larry Parkhurst] to read!!").

On June 15, 2010, Sowers sent a single-page excerpt from the notebook of co-inventor Susan Flood ("Flood Excerpt") as a PDF attachment to an e-mail sent to Cook and Beal. Schmid Decl. Ex. F (Sowers Depo.), 11:5-13.  Later the same day, Beal forwarded the e-mail with the attached Flood Excerpt to Cook, Sowers, and Jeff Oster, an attorney at Troll Busters LLC. *Id.* Ex. G (Beal Depo.), 11:3-8.  In June 2010, Beal also forwarded to Dr. Lawrence Parkhurst the Livak

---

[1]  The notebooks recorded a series of experiments on single- and dual-labeled nucleic acid probes conducted by Life Tech employees from 1992 to 1996. The results of the experiments led to the filing of the patents-in-suit: U.S. Patent Nos. 5,538,848; 5,723,591; 5,876,930; 6,030,787; and 6,258,569. Dkt. No. 1, Complaint. The inventors of the patents-in-suit are Kenneth J. Livak, Susan J. Flood, Jeffrey Marmaro, and Khairuzzaman Bashar Mullah. *Id.* The notebooks at issue are the notebooks of the above-listed inventors.

[2]  On June 7, 2010, Cook sent an email to two colleagues, Marc Beal and Sowers, indicating he had the Livak notebooks. Schmid Decl. Ex. I (June 7 Email). Cook stated that they would "want to look at the Livak notebooks to get the context for Livak's experiments and some of the probes he worked [sic] with. The 94 notebook is a must read." *Id.*

2

1   Excerpt that he had received from Cook.[3]  Schmid Decl. Ex. G (Beal Depo.), 11:8-10, 34:13-19.

2   Cook was not aware of this disclosure to Dr. Lawrence Parkhurst.  *Id.* Ex. E (Cook Depo.), 57:4- 8.

3          On or about June 17, 2010, Daniel Johnson, Jr., partner at Morgan Lewis and counsel for

4   Biosearch and Eurofins, learned that Mann had forwarded the Life Tech documents to Cook.

5   Declaration of Daniel Johnson, Jr. in Support of Biosearch's Opposition to Plaintiffs' Motion for

6   Sanctions ("Johnson Decl."), ¶ 3; Mann Decl. ¶ 3.  Johnson immediately instructed Mann to notify

7   Cook that the documents were marked AEO, to cease any use of the documents, and to destroy all

8   copies of the documents.  Johnson Decl., ¶ 4.  Mann immediately e-mailed and called Cook to

9   instruct him accordingly. Mann Decl., ¶ 4.  Cook was away on vacation but received the message.

10  Schmid Decl. Ex. E (Cook Depo.), 27:1-7, 20-23.  No one informed Life Tech of the disclosure of

11  AEO documents.

12         On June 21, 2010, after returning from his vacation, Cook destroyed the hard copies and

13  electronic files of the notebooks, including the files on his "thumb drive."  *Id.* at 28:7-15.  He did

14  not, however, destroy any e-mails that had the PDF attachments of the Livak and Flood excerpts.  *Id.*

15  at 28:24-29:11. Cook states that he never made any written notes, comments or highlighting on the

16  printouts of the notebooks in the binders or on the PDF documents.  *Id.* at 23:2-4, 28:20-23.

17         At the same time, Cook instructed Sowers and Beal to destroy all copies they had of the

18  notebook materials. Schmid Decl. Ex. G (Beal Depo.), 41:5-19; Tautkus Decl. Ex. F (Sowers

19  Depo.), 17:3-15.  Both Beal and Sowers state that they complied with Cook's instructions and

20  destroyed all electronic and hard copies of the notebook material.  Schmid Decl. Ex. G (Beal Depo.),

21  41:24-42:16, Ex. F (Sowers Depo.) 18:4-7.  The destroyed copies did not contain any notes or

22  highlighting. Tautkus Decl. Ex. G (Beal Depo.), 33:22-23, Ex. F (Sowers Depo.), 17:19-23. Sowers

23  did not, however, delete emails summarizing his analysis of the notebooks. *Id.* Ex. F (Sowers

24  Depo.), 17:19-23.  Johnson and Mann confirmed with Cook that the notebook materials had been

25

26         [3]   Dr. Lawrence Parkhurst is a Professor of Chemistry at the University of Nebraska.
    Declaration of Rita Tautkus in Support of Biosearch's Opposition to Plaintiffs' Motion for Sanctions
27  ("Tautkus Decl.") Ex. C (Dr. Lawrence Parkhurst Depo.), 5:15-18. His wife, Dr. Laura Parkhurst, is a
    retired Assistant Research Professor who formerly worked in her husband's laboratory. *Id.* Ex. D (Dr.
28  Laura Parkhurst Depo.), 5:17–6:4. Both are fact witnesses in this case and were deposed by Life Tech
    in October 2010 regarding their work in the early 1990's.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    deleted.  Schmid Decl. Ex. E (Cook Dep.), 29:23-30:3; Mann Decl., ¶ 5; Johnson Decl., ¶ 5.  There

2    is no indication, however, that Parkhurst was asked to destroy the Livak Excerpt emailed to him by

3    Beal. *See* Schmid Decl. Ex. E (Cook Depo.), 30:6-23.  Nor is there any suggestion that Oster was

4    told the same regarding the Flood Excerpt he received from Beal.

5           Life Tech remained unaware of the disclosure of the notebooks up to and following the entry

6    of the protective order on April 6, 2011 in the Eastern District of Texas.  Protective Order, Dkt. No.

7    174.[4]  Morgan Lewis attorney Rita Tautkus was responsible for drafting the protective order, with

8    Johnson and Mann taking no part in its negotiations.  Tautkus Decl., ¶ 2; Johnson Decl., ¶ 2; Mann

9    Decl., ¶ 6.  The protective order addresses disclosure of documents as follows:

10          In the event of any disclosure other than in a manner authorized by this Protective
            Order by a Receiving Party of CONFIDENTIAL or HIGHLY CONFIDENTIAL –
11          OUTSIDE COUNSEL'S EYES ONLY material, the Receiving Party responsible for
            the disclosure shall immediately notify the Designating Party of all the pertinent facts
12          and make every reasonable effort to prevent further unauthorized disclosure, including
            retrieving all copies of the CONFIDENTIAL or HIGHLY CONFIDENTIAL –
13          OUTSIDE COUNSEL'S EYES ONLY material from the unauthorized recipient(s)
            thereof and securing the agreement of the unauthorized recipients not to further
14          disseminate the CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE
            COUNSEL'S EYES ONLY material in any form. Compliance with the foregoing
15          shall not prevent a party from seeking further relief from the Court.

16   Protective Order, Dkt. No. 174, ¶ 3(d).

17          Life Tech eventually discovered that the notebooks had been disclosed when it found a

18   portion of the Livak notebook, and emails between Cook, Beal, and Sowers discussing the notebook,

19   in Biosearch's document production.  Schmid Decl., ¶ 14.  Beginning on November 3, 2011, Life

20   Tech wrote a series of letters to Johnson regarding the discovery of the disclosed notebooks and

21   seeking details of the occurrence.  *Id.* Ex. P (Nov. 3 Letter).  Johnson insisted the disclosure was

22   inadvertent and that the problem was resolved.  *Id.* Exs. C and D (Johnson Letters).  Johnson assured

23   that all copies of the notebooks were destroyed, save those contained in email correspondences in

24   light of litigation hold procedures.  *Id.*  Morgan Lewis, Johnson reported, also "confirmed" that the

25   notebooks were not provided outside of Biosearch.  *Id.* Ex. D (Nov. 11 Johnson Letter).  He

27          [4]  The April 6, 2011 protective order was superceded by an amended protective order entered
28   on October 3, 2011. *See* Amended Protective Order, Dkt. No. 214.  The amended order changed only
     the identity of some of the parties' representatives.  *Id.*

4

United States District Court

For the Northern District of California

1    responded to Life Tech's concern that the notebooks were shared with the Parkhursts by stating that

2    "to our knowledge[,] no Life Tech lab notebooks were in the possession of the Parkhursts . . . ." *Id.*

3        The parties participated in a meet and confer on December 8, 2011, at which Johnson agreed

4    to make Cook, Sowers, and Beal available for deposition regarding the disclosure.  *Id.* Ex. W (Dec. 8

5    Letter).  All three Biosearch employees were deposed on December 20, 2011.

6        On February 22, 2012, the case was transferred from the Eastern District of Texas to the

7    Northern District of California.  *See* Dkt. No. 238.  Life Tech filed the present Motion on March 1,

8    2012.

9        **B.    The Motion**

10       Life Tech seeks sanctions under both this Court's inherent authority and Rule 37(b) of the

11   Federal Rules of Civil Procedure.  *Id.* at 5.  Life Tech states that in order to impose sanctions, it need

12   only show, by clear and convincing evidence, "(1) that a court order was in effect, (2) that the order

13   required certain conduct by the respondent, and (3) that the respondent failed to comply with the

14   court's order."  *Id.* at 6 (citing *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 291 (5th

15   Cir. 2002)).

16       Life Tech points to three alleged violations of court orders by Morgan Lewis that it contends

17   warrant multiple sanctions: 1) violation of the Eastern District of Texas's Patent Local Rule 2-2; 2)

18   improper reliance on "self-help" in attempting to claw-back the disclosure; and 3) violation of the

19   April 6, 2011 protective order.

20       First, Life Tech asserts that its production to Biosearch, which included the notebooks, was

21   made pursuant to the Eastern District of Texas's P.R. 2-2.  Motion at 6.  Under that rule, "disclosure

22   of the confidential document or information shall be limited to each party's outside attorney(s) of

23   record and the employees of such outside attorney(s)."  *Id.* (citing Schmid Decl. Ex. B (P.R. 2-2)).

24   Life Tech argues that Mann violated this rule when he distributed Life Tech's document production

25   to Cook.  *Id.*

26       Second, Life Tech appears to argue that Johnson and Mann violated its obligation to tell Life

27   Tech of the disclosure by engaging in "self-help" remedies that ultimately turned out to be

28   inadequate.  *Id.* at 6-7 (citing *Visto Corp. v. Seven Networks, Inc.*, 2006 U.S. Dist. LEXIS 91453, at

United States District Court

For the Northern District of California

*24-25 (E.D. Tex. Dec. 19, 2006)).  Life Tech asserts that Morgan Lewis' actions following the discovery of the disclosure were inadequate because "it allowed some unauthorized materials to remain in Biosearch's email and deleted other documents before determining whether they contained discoverable information." *Id.* at 7.  Life Tech contends that, as a result of Morgan Lewis' incomplete attempt to claw-back the disclosure, the notebooks remained in Biosearch's possession and continued to be "reviewed" by Biosearch's competitive decision makers. *Id.* (citing Schmid Decl. Ex. E (Cook Depo.), 28:24-29:4, 30:24-31:5).  If Morgan Lewis had immediately informed Life Tech of the disclosure, Life Tech argues, it "could then have directed removal of all unauthorized materials from Biosearch's possession after such preservation of all materials, confirmation of the deletion, and verification of the scope of the unauthorized disclosure." *Id.*

Third, Life Tech contends that Johnson and Mann violated the April 6, 2011 protective order by not immediately informing Life Tech of the disclosure once the protective order became effective. *Id.* at 8 (citing Protective Order, Dkt. No. 174, ¶ 3(d)).  Life Tech rejects any suggestion that the length of time between the disclosure and the entry of the protective order excuses Johnson's and Mann's failure to notify Life Tech. *Id.* at 8 n. 7.  Life Tech insists that Johnson knew of the protective order's requirements well before it actually became effective, and Johnson should therefore be held responsible for not revealing the disclosure, notwithstanding the passing of ten months. *Id.*  Life Tech also argues that Morgan Lewis' failure to "address Life Tech's concerns with the gravity to which they were entitled" constitute an additional violation of the protective order. *Id.* at 8-9.

Life Tech proposes four sanctions that it claims are appropriate in light of the violations alleged above: 1) barring Mann and Johnson from participating in the prosecution of patents in the same field of technology as the patents-in-suit; 2) barring Mann and Johnson from further access to Life Tech's protected information; 3) excluding the testimony of the Parkhursts in this action; 4) awarding Life Tech fees and costs incurred in enforcing the violated orders. *Id.* at 9.

Life Tech argues that the question of whether sanctions are proper here is governed by the law of the Fifth Circuit, not the Ninth Circuit.  Life Tech states that "because the violated local rules and Court order are those of the Eastern District of Texas, that court has the stronger interest in

United States District Court

For the Northern District of California

enforcing these orders." *Id.* at 5 n. 4.  Under Fifth Circuit law, which Life Tech contends does not differ relevantly from Ninth Circuit law, the above sanctions may be imposed even if the disclosure was inadvertent because the law does not require a showing of "willful or 'contumacious' misconduct for sanctions that are less harsh than dismissal or default judgment." *Id.* at 9 (quoting *Trenado v. Cooper Tire & Rubber Co.*, 274 F.R.D. 598, 600 (S.D. Tex. 2011)).

First, regarding imposing the patent prosecution bar on Johnson and Mann, Life Tech argues such a sanction is justified since Mann and Johnson, "who have violated court orders and shown disregard for Life Tech's highly confidential materials, may inadvertently use Life Tech's highly confidential information if they prosecute patents for Life Tech's competitors." *Id.* at 11-12.  Life Tech asserts that its in-house counsel had to sign the prosecution bar—which forbids the prosecution of patents in the same field of technology as the patents-in-suit throughout the pendency of this case and for a period of eighteen months following the final disposition of this action—in order to view Biosearch's highly confidential information, and Johnson and Mann should now be subject to the same restrictions.  *Id.*

Second, Life Tech contends that Mann can no longer be trusted with Life Tech's confidential information because of his admitted disclosure and thus he should be precluded from further access to such information.  *Id.* at 12 (citing *Visto*, 2006 U.S. Dist. LEXIS 91453, at *24).  Life Tech argues that a similar ban is warranted for Johnson because his signing Morgan Lewis' filings regarding the stipulated protective order imposed a "particular duty" to comply with the protective order.  *Id.* at 12-13.  Life Tech asserts that Johnson's failure to comply warrants banning him from receiving Life Tech's confidential information.  *Id.*

Third, Life Tech contends that the Parkhursts' testimony should be precluded from this case because any testimony they give "has been inherently tainted."  *Id.* at 14.  Life Tech argues there is a significant chance that the exposure to the notebooks will color Dr. Larry Parkhurst's invalidity testimony, pointing to Cook's belief that the notebooks would have a large impact on Parkhurst.  *Id.* (citing Schmid Decl. Ex. J (June 11 Cook-Beal Email) ("This may prove hard for Larry to read!!")).  Although there is no indication Dr. Laura Parkhurst ever saw the notebooks, because her husband, Dr. Larry Parkhurst, was given the notebooks without notice of their confidential nature, "the risk

United States District Court

For the Northern District of California

1  that he shared the information he learned from these documents with his wife . . . [is] too great." *Id.*

2  at 14.

3     Fourth, Life Tech seeks an award of attorneys fees and costs it has incurred to date "seeking

4  to enforce this Court's protective orders." *Id.* at 15.  Life Tech states its fees and costs—totaling

5  $27,400.42—are reasonable and should be awarded.  *Id.* (citing *Brocade Commc'ns Sys. v. A10*

6  *Networks, Inc.*, U.S. Dist. LEXIS 99932, at *18-19 (N.D. Cal. Sept. 6, 2011)).

7     **C.**  **The Opposition**

8     Biosearch rejects Life Tech's arguments and contends that there is no basis for sanctions.

9  Opposition at 6.  Specifically, Biosearch argues that Life Tech fails to make the requisite showing

10  that "Defendants and their attorneys had engaged in bad faith conduct or willful conduct that

11  exceeded gross negligence."  Opposition at 5-6 (citing *Armored Group, LLC v. Supreme Corp.*, 2010

12  U.S. Dist. LEXIS 21822, at *5 (D. Ariz. Feb. 22, 2010)).  Biosearch maintains that the disclosure to

13  Cook was inadvertent and that Johnson and Mann "clawed back the notebooks and confirmed that

14  all copies had been destroyed."  *Id.* at 7.  Biosearch argues further that no bad faith or willfulness has

15  been established with respect to the lack of notification by Morgan Lewis attorneys to Life Tech,

16  and suggests that the passage of time is the reason for Morgan Lewis' silence.  *Id.*  Additionally,

17  Biosearch contends that the "self-help" language Life Tech cites from *Visto* is taken out of context

18  and does not apply to the actions of Johnson and Mann.  *Id.* at 8 (citing *Visto*, 2006 U.S. Dist.

19  LEXIS 91453, at *24-25).

20     Next, Biosearch asserts that sanctions are unwarranted because Life Tech has not established

21  that the notebooks contain confidential information and that it has been prejudiced by the disclosure.

22  *Id.* at 6.  With respect to the five notebook pages that were distributed within and outside Biosearch,

23  Defendant maintains that "most of the information was publicly available in published articles or the

24  patents-in-suit."  *Id.* at 8.  Additionally, Cook, Beal, and Sowers, all testified that the content in the

25  notebook excerpts was already publicly available.  *Id.* (citing Tautkus Decl. Ex. E (Cook Depo),

26  34:12-22; *Id.* Ex. G (Beal Depo.), 21:18-24, 26:6-27:11; Schmid Decl. Ex. F (Sowers Depo.), 11:23-

27  12:3).  Even for information in the notebooks that are not publicly available, Biosearch argues that

28

Life Tech has not met the standard under the protective order for designating material confidential; namely, that the that the material constitutes or contains "confidential research and development information for future products" or "information of an extremely sensitive nature that, if disclosed without restriction, may cause competitive harm to the Designating Party." *Id.* at 9 (citing Protective Order, Dkt. No. 174, ¶ 3).

Furthermore, Life Tech has not been injured by the disclosure because the Parkhursts' testimony would not address the subject matter of the inventions claimed in the patents-in-suit or the subject matter in the Livak Excerpts. *Id.* at 9-10. Rather, Biosearch argues, their testimony will focus on their own work conducted in the early 1990's that are prior art to the patents-in-suit. *Id.* None of the three Biosearch employees that received notebook materials will testify in this case, and there is no indication that Biosearch intends to use its knowledge of the material in the notebooks for its commercial products or business. *Id.* Mr. Oster, an attorney who received the Flood Excerpt, is unconnected with this case. *Id.* at 10. Finally, Biosearch contends that the deposition testimonies of the Biosearch employees establishes that no discoverable information was destroyed in the process of deleting the notebooks. *Id.*

Even if Life Tech is able to meet the high bar required for sanctions, Biosearch argues, the four sanctions Life Tech proposes are unwarranted. *Id.* at 11. First, regarding the prosecution bar, Biosearch contends that the sanction is inappropriate as applied to Johnson and Mann because the sanction does not bear any relationship to the alleged risks raised by Life Tech. *Id.* at 11-12. Johnson is not a patent prosecutor or admitted to practice before the U.S. Patent and Trademark Office, making the sanction "nonsense." *Id.* at 11. Moreover, Biosearch argues that it is illogical for Life Tech to argue that the prosecution bar is required because Johnson—who did not disclose any confidential information—may inadvertently use Life Tech's confidential information if he prosecutes patents for Life Tech's competitors. *Id.* at 11-12. Mann should also not be subject to the prosecution bar because there is no explanation why Mann's past actions show he is a risk to use Life Tech's confidential information in a patent prosecution. *Id.* at 12. Biosearch argues that Life Tech's failure to assert earlier that Mann was subject to the bar reveals that Life Tech does not

United States District Court

For the Northern District of California

1    actually think Mann prosecutes patents related to the technology at issue in this lawsuit.  *Id.* (citing

2    Joint Motion to Enter Protective Order and Rule on Disputed Issues, Dkt. No. 104).

3          Second, Biosearch contends that precluding Johnson and Mann from access to Life Tech's

4    designated documents is inappropriate and is effectively a request that Johnson, who is lead trial

5    counsel for Biosearch and Eurofins, and Mann be banned from the case.  *Id.* at 13.  Biosearch states

6    that approximately 998,000 documents produced by Life Tech to date appear to be designated either

7    "Confidential" or "Highly Confidential – Outside Counsels' Eyes Only."  *Id.* (citing Tautkus Decl.,

8    ¶¶ 4-5).  Because the alleged conduct will not have a "continuing effect" on the proceedings,

9    disqualification is not warranted.  *Id.* (citing *Krzyzanowski v. Orkin Exterminating Co., Inc.*, 2009

10   U.S. Dist. LEXIS 113200, at *9 (N.D. Cal. Nov. 19, 2009)).

11         Third, the Parkhursts should not be precluded from testifying because their testimony is

12   unrelated to the content of the patents-in-suit.  *Id.* at 14-15.  With respect to Dr. Lawrence Parkhurst,

13   the only discussion of Livak's work at his deposition related to whether he had seen the patents-in-

14   suit or discussed them with anyone.  *Id.* at 14 (citing Tautkus Decl. Ex. C (Dr. Lawrence Parkhurst

15   Depo.), 202:24–204:2, 205:4–206:5, 208:20–210:7; 214:18-20, 215:20–217:18).  Dr. Laura

16   Parkhurst, Biosearch asserts, was not questioned at all about Livak or his work.  *Id.*  Furthermore,

17   precluding their testimony would "significantly prejudice" Defendants because the "facts relating to

18   their work in the early 1990's is a lynchpin to Defendants' invalidity defense."  *Id.* at 14-15 (citing

19   Johnson Decl. ¶ 7).

20         Fourth, Life Tech's request for costs and fees should be denied because they have not

21   established a basis for sanctions, as described above.  *Id.* at 15.

22         **D.      The Reply**

23         Life Tech responds to the Opposition by pointing out that Biosearch does not contest that its

24   attorneys violated court orders.  Plaintiffs' Reply to Opposition to Motion for Sanctions for

25   Violation of Protective Order ("Reply"), 1-2.  Furthermore, Life Tech argues, Biosearch does not

26   contest that the Motion is governed by Eastern District of Texas law.  Reply at 2.  To the extent

27   Biosearch relies on Ninth Circuit law, that reliance is misplaced, and the caselaw is distinguishable.

28

United States District Court

For the Northern District of California

*Id.* at 5. Life Tech asserts that neither the Northern District of California, nor the Eastern District of Texas, require a finding of bad faith or willfulness for sanctions, under Rule 37 or the Court's inherent authority, less sever than dismissal or default. *Id.* at 5-6 (citing *Brocade*, U.S. Dist. LEXIS 99932, at *4-5, *11-14; *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910-11 (9th Cir. 1986); *Chilcutt v. United States*, 4 F.3d 1313, 1322 (5th Cir. 1993); *Lyn-Lea*, 283 F.3d at 290).

Additionally, Life Tech argues that Biosearch's insistence that the notebooks should not have been designated as confidential and that Life Tech was not harmed by the disclosure is irrelevant and should be rejected by the Court. *Id.* at 7-8. Such factors are simply not considered when awarding sanctions, Life Tech contends. *Id.*

### III.    ANALYSIS

#### A.    Legal Standard

Rule 37 of the Federal Rules of Civil Procedure grants courts the authority to impose sanctions where a party has violated a discovery order, including a protective order issued pursuant to Rule 26(f).[5] Fed. R. Civ. P. 37(b)(2); *see Nat'l Med.*, 792 F.2d at 910; *Harmston v. City and County of San Francisco*, 2007 WL 3306526, at *3 (N.D. Cal. Nov. 6, 2007) (Illston, J.) (analyzing violation of protective order under Rule 37) . In particular, Rule 37(b)(2) provides, in relevant part, as follows:

> Sanctions in the District Where the Action Is Pending.
>
> (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>
> > (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> >
> > (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> >
> > (iii) striking pleadings in whole or in part;

---

[5] Rule 26(f)(3) addresses the development of a discovery plan and references "any other orders that the court should issue under Rule 26(c)," the rule addressing protective orders. Fed. R. Civ. P. 26(f)(3)(F).

1              (iv) staying further proceedings until the order is obeyed;

2              (v) dismissing the action or proceeding in whole or in part;

3              (vi) rendering a default judgment against the disobedient party; or

4              (vii) treating as contempt of court the failure to obey any order except an order to
     submit to a physical or mental examination.

5    . . .

6    (C) Payment of Expenses. Instead of or in addition to the orders above, the court must order
     the disobedient party, the attorney advising that party, or both to pay the reasonable

7    expenses, including attorney's fees, caused by the failure, unless the failure was substantially
     justified or other circumstances make an award of expenses unjust.

8

9    Fed. R. Civ. P. 37(b)(2).  Sanctions are permissible under Rule 37 when a party fails to comply with

10   a court order, regardless of the reasons.  *See Societe Internationale Pour Participations Industrielles*

11   *et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 208 (1958) ( "[T]he willfulness or good faith of [a

12   party], can hardly affect the fact of noncompliance and [is] relevant only to the path which the

13   District Court might follow in dealing with [the party's] failure to comply.");  *David v. Hooker, Ltd.*,

14   560 F.2d 412, 420 (9th Cir. 1977) ("in view of the possibility of light sanctions, even a negligent

15   failure [to obey an order] should come within" Rule 37);  *Chicult v. U.S.*, 4 F.3d 1322, 1320 n. 23

16   (5th Cir. 1993) (citing *Societe* for the proposition that "the type of conduct displayed by a party had

17   no bearing on *whether* sanctions should be imposed, but only on the *type* of sanctions imposed").[6]

18        This Court, on motion or on its own, may also issue sanctions under Rule 16(f) in the event

19   that a party or their attorney fails to obey a scheduling or pretrial order.  Fed. R. Civ. P. 16(f).  The

20   Court may issue any just sanctions, including those authorized by Rule 37(b)(2)(A)(ii)-(vii).  *Id.*

21   Additionally, the Court must award reasonable expenses, including attorney's fees, incurred as a

22   result of the violation, "unless the noncompliance was substantially justified or other circumstances

23   make an award of expenses unjust."  *Id.*

24        Finally, this Court may issue sanctions under its inherent power, but only upon a showing of

25   _____

26       [6]  Because the local rule and protective order alleged to have been violated "are those of the
     Eastern District of Texas," Life Tech contends that the law of that district should apply to its Motion.

27   Although Defendants do not directly dispute the issue in their Opposition, the Court need not rule on
     the matter because it finds that the outcome is the same under either Fifth Circuit or Ninth Circuit

28   precedent.

United States District Court

For the Northern District of California

1    bad faith. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991); *See also Mendez v. County of*

2    *San Bernardino*, 540 F.3d 1109, 1130–33 (9th Cir. 2008) (vacating sanction order imposed under

3    district court's inherent powers where the court did not make a bad faith finding before imposing

4    sanctions and the record did not support such a finding); *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir.

5    2001) (noting that *Chambers* used "'bad faith' as a shorthand term to encompass a broad range of

6    conduct in observing that a party may 'show[ ] bad faith by delaying or disrupting the litigation or

7    by hampering enforcement of a court order'" (quoting 501 U.S. at 46)); *Toon v. Wackenhut*

8    *Corrections Corp.*, 250 F.3d 950, 952 (5th Cir. 2001) ("The court must make a specific finding of

9    bad faith" in order to issue sanctions under its inherent powers.).

10        Furthermore, "when there is bad-faith conduct in the course of litigation that could be

11    adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than [its]

12    inherent power." *Chambers*, 501 U.S. at 50. "Because of the potency of inherent powers and the

13    limited control of their exercise, however, they must be used with great restraint and caution." *Toon*,

14    250 F.3d at 952 (quoting *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464,

15    467 (5th Cir. 1996)).

16        **B.**    **Whether Sanctions Should be Imposed**

17            **1.**    **Patent Local Rule 2-2**

18                **a.**    **Violation of the Patent Local Rule**

19        Biosearch does not dispute that Mann violated Patent Local Rule 2-2. *See* Eastern District of

20    Texas Patent Rule 2-2 (limiting disclosure of confidential information "until a protective order is

21    issued by the Court"). Particularly in patent cases, it is critical that outside counsel handle the

22    opposing party's confidential information with the utmost caution. Although inadvertent, Mann's

23    disclosure of AEO information to his client resulted from his failure to even glance at the documents

24    he sent to Cook, which were clearly designated AEO.

25

26

27

28

United States District Court

For the Northern District of California

Because Mann violated the patent local rule, the Court will turn to what sanctions, if any, are warranted in light of the violation.[7]

### b.    Appropriate Sanctions

Life Tech seeks four sanctions for Mann's violation of the patent local rule: 1) barring Mann from participating in the prosecution of patents in the same field of technology as the patents-in-suit; 2) barring Mann from further access to Life Tech's protected information; 3) excluding the testimony of the Parkhursts in this action; 4) awarding Life Tech fees and costs incurred in enforcing the violated order. *Id.* at 9. Each of the proposed sanctions are discussed below in turn.

### i.    Patent Prosecution Bar

Life Tech's request to have the Court subject Mann to the 18-month patent prosecution bar is denied by the Court.

"The Supreme Court . . . determined that decisions to impose sanctions under Rule 37(b) must be guided by two important considerations: The sanction must first of all be just, and it must

---

[7]  Biosearch argues that, despite the violation, sanctions cannot be issued because there is no showing of willfulness or bad faith. However, as discussed above, such a showing is not a prerequisite for sanctions issued under the Federal Rules of Civil Procedure.

Regarding that authority under the Federal Rules, the Court notes that it is not entirely clear that it may award sanctions for a violation of a local rule under Rule 37(b). *Compare Network Caching Tech., LLC v. Novell, Inc.*, 2003 WL 21699799, at *3 (N.D. Cal. Mar. 21, 2003) (Walker, J.) (declining to consider Rule 37 as a basis for sanctions for party's alleged violation of a patent local rule requiring disclosure because sanctions under Rule 37 are "limited" and the "Ninth Circuit has declined to extend these sanctions to general discovery disputes under the rule" (quoting *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988))) *with Biax Corp. v. NVIDIA Corp.*, 2011 WL 63650, at *2 (D. Colo., Jan. 7, 2011) (applying Rule 37(b) where party violated local rule governing the discovery process). Biosearch, however, does not object to the Court's authority to issue sanctions under Rule 37(b) for a violation of a local rule.

Rule 16(f), however, certainly provides the Court with an alternative basis on which to award sanctions for a violation of a local rule governing pretrial matters. *See Guru Denim, Inc. v. Hayes*, 2010 WL 1854020 (C.D. Cal. May 6, 2010) (evaluating sanctions for violation of pretrial local rules under Rule 16(f)). Local rules "have the force of law," *Hollingsworth v. Perry*, 130 S. Ct. 705, 710 (2010), and patent local rules, in particular, are vital to the pretrial process, *see STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F. Supp. 2d 845, 849 (E.D. Tex. 2004) ("Importantly, litigants are to read the Patent Rules as controlling exceptions to the Federal Rules of Civil Procedure, the local rules of the Eastern District, and other federal law. The Court's Patent Rules are specific exceptions to the normal pretrial procedures that the Court has enacted to effectuate an orderly and efficient pretrial process."); *Integrated Circuit Sys. v. Realtek Semiconductor Co.*, 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004) (Zimmerman, J.) ("The purpose of the Patent Local Rules is to place the parties on an orderly pretrial track . . . ."). The Court therefore finds that it may award sanctions for the violation of Patent Local Rule 2-2, which governs initial discovery disclosures, under both Rule 37(b) and Rule 16(f).

**United States District Court**
For the Northern District of California

1    'specifically relate[ ] to the particular "claim" which was at issue in the order to provide discovery.'"

2    *Chicult*, 4 F.3d at 1320-21 (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,

3    456 U.S. 694, 707 (1982)).  The Court cannot conclude that the sanction of a prosecution bar

4    "specifically relates" to the particular "claim" at issue in the discovery order; namely, the disclosure

5    of confidential information in violation of the local rule.  Life Tech argues that the prosecution bar is

6    necessary to ensure that Mann does not "inadvertently use Life Tech's confidential information if

7    [he] prosecute[s] patents for Life Tech's competitors."  Motion at 11-12.  However, Life Tech's fear

8    of Mann inadvertently using its confidential information in a patent prosecution is not related to his

9    conduct or the consequences arising from that conduct that is at issue here.  Moreover, such a

10   sanction would not be "just" under these circumstances.  The Court also notes that Mann was

11   *allowed* to have access to Life Tech's AEO material.  Accordingly, the prosecution bar will not be

12   imposed pursuant to either Rule 37(b) or Rule 16(f).

13        Likewise, this Court's inherent powers is also an inappropriate basis, under the

14   circumstances of this case, on which to order a prosecution bar.  In addition to the sanction being

15   unrelated, as discussed above, a prerequisite to the use of the Court's inherent powers is a finding

16   that the nonmoving party engaged in bad faith conduct.  Life Tech does not allege, nor can the Court

17   conclude, that Mann's disclosure to Cook was done in bad faith.

18              **ii.       Precluding Mann From Further Access to Life Tech's**
                            **Designated Information**

19

20        The Court grants Life Tech's request to impose a bar on Mann's access to Life Tech's AEO

21   information.

22        The parties dispute the type of conduct that is required in order for this Court to impose

23   sanctions under Rule 37(b) or, for that matter, Rule 16(f).  As noted above, the type of conduct

24   required varies depending on the particular sanction at issue.  *Chicultt v. U.S.*, 4 F.3d at 1320 n. 23

25   (citing *Societe* for the proposition that "the type of conduct displayed by a party had no bearing on

26   *whether* sanctions should be imposed, but only on the *type* of sanctions imposed").  The Fifth Circuit

27   has identified a spectrum of conduct—from negligence, to causing prejudice, to bad faith and

28   willfulness—that may justify the imposition of a sanction that corresponds in severity with the

15

**United States District Court**
For the Northern District of California

party's conduct. *See F.D.I.C. v. Conner*, 20 F.3d 1376, 1380 n. 3 (5th Cir. 1994). Dismissal, the most extreme sanction,

> is appropriate only if the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct. Further . . . the discovery order must be attributable to the client instead of the attorney[,] [and] the violating party's misconduct "must substantially prejudice the opposing party." Finally, . . . dismissal is usually improper if a less drastic sanction would substantially achieve the desired deterrent effect.

*Id.* at 1380-81 (citations omitted). On the other hand, some of the least harsh sanctions, such as establishment of certain facts, do not require a showing of prejudice, let alone a finding of bad faith or willfulness. *See Id.* at 1380 n. 3; *Chilcutt*, 4 F.3d at 1320 n. 17. "Simply put, while lesser sanctions may be imposed without a showing of prejudice, more severe sanctions are justified only if the opposing party has suffered some palpable prejudice." *Id.*

So the question in regards to the request to preclude Mann from further access to Life Tech's confidential information is what type of conduct is required in order to impose that particular sanction. Life Tech does not address this question in its motion, and instead relies on *Visto Corp. v. Seven Networks, Inc.*, 2006 U.S. Dist. LEXIS 91453, at *24-25 (E.D. Tex. Dec. 19, 2006), which barred two attorneys from further receipt of confidential information in that case. The attorneys' conduct in *Visto*, however, involved bad faith and willfulness, and the Court therefore finds it inapposite to this case.[8] Nonetheless, while the Court notes that barring Mann from accessing Life

_____

[8] One of the attorneys in *Visto*, Mr. Warder, who signed a patent prosecution bar required by the protective order, violated the prosecution bar twice. *Visto*, 2006 U.S. Dist. LEXIS 91453, at *15-18. After the first violation, which he claimed was inadvertent, Warder promised not to violate the bar again. *Id.* Subsequently, however, the court found that Warder was continuing to prosecute patents, and worse, he was attempting to conceal his prosecution activities by having a colleague sign prosecution documents. *Id.* at 18-21. The court found that this conduct warranted barring Warder from receiving further confidential information in the case or in any other case on the court's docket involving Visto. *Id.* at 24.

The second attorney, Ms. Gillette, was found to have unilaterally claimed the right to designate and redact certain portions of documents secured under the protective order before showing them to her witnesses. *Id.* at 19. After opposing counsel objected to her actions, the court found that Ms. Gillette obstructed counsel's attempt to gain information about the unauthorized behavior. *Id.* at 24. The court also noted that Ms. Gillette's conscious violation of the protective order—her decision to redact portions of the confidential documents as she saw fit—was an inexcusable resort to "self-help," notwithstanding contentions that the provisions of the protective order were "burdensome or onerous." *Id.* at 24-25.

Although the court in *Visto* did not address explicitly whether the conduct at issue was willful or done in bad faith, it would not be unreasonable to conclude that it was.

United States District Court

For the Northern District of California

1    Tech's AEO information is a fairly harsh sanction, the Court still finds this sanction appropriate.

2    The Court cannot conclude that the disclosure of 2,963 pages of AEO, proprietary scientific

3    laboratory notebooks to the CEO of a rival company did not cause Life Tech any prejudice.  *See*

4    *Connor*, 20 F.3d at 1380 n. 3.  As evidenced by the email discussions among Biosearch employees

5    upon receiving the disclosure, the notebooks were a flashpoint of conversation and Cook excerpted

6    portions of the notebook he indicated include the author's "eureka moment(s)."  Moreover, that

7    excerpt eventually made it to Dr. Parkhurst, a testifying expert in this litigation.  Barring Mann from

8    further access to AEO documents in this case is warranted under these circumstances.

9                          **iii.        Excluding the Testimony of the Parkhursts**

10           Life Tech's request to bar the entire testimony of both Dr. Larry Parkhurst and Dr. Laura

11    Parkhurst is unpersuasive and the Court denies such a sanction.  The Court, however, does preclude

12    the Parkhursts from testifying on the subject of the contents of the patents-in-suit or the contents of

13    the improperly disclosed inventor notebooks.

14           As discussed above, Rule 37(b)(2)(A)(ii) allows a court to impose sanctions "prohibiting the

15    disobedient party from . . . introducing designated matters in evidence."  Fed. R. Civ. P.

16    37(b)(2)(A)(ii).  Although willfulness and bad faith are not requirements for imposing sanctions

17    under Rule 37, the willfulness and good faith of party are a factor in determining what type of

18    sanction to impose.  *See Chicult*, 4 F.3d at 1320 n. 23.  When a court excludes evidence under Rule

19    37, the court should do so only where there is a finding of prejudice to the nonoffending party.  *See*

20    *Rooney v. Sierra Pacific Windows*, 2011 WL 2149097, at * 3 (N.D. Cal., June 1, 2011) (Koh, J.)

21    ("Evidentiary preclusion is a harsh sanction that generally is not imposed where the failure to

22    provide discovery was either substantially justified or harmless."); *Allergan, Inc. v. Sandoz Inc.*,

23    2011 U.S. Dist. LEXIS 69429, at *19-20 (E.D. Tex. June 28, 2011) (striking an expert report and

24    precluding that expert from testifying at trial where the party presenting the expert caused "extreme

25    prejudice" by inadvertently disclosing confidential information to a witness not designated on its list

26    of potential experts).

27           Life Tech argues that the Parkhursts should be precluded entirely from testifying in this case

28    because their exposure to the five-page Flood Excerpt "inherently taint[s]" their testimony.  Life

1   Tech cites *Allegran* for the proposition that such evidentiary sanctions can be imposed

2   notwithstanding the inadvertent nature of the conduct.  Motion at 10-11; Reply at 14-15.  While this

3   is true, Life Tech ignores the *Allegran* court's explicit finding of "extreme prejudice" supporting the

4   blanket exclusion of an expert's testimony.  *Allegran*, 2011 U.S. Dist. LEXIS 69429, at *18-20.  Life

5   Tech does not dispute Biosearch's contention that the Parkhursts' testimony is the "lynchpin to

6   Defendants' invalidity defense."  Opposition at 15; Reply at 14.  Accordingly, to impose such a

7   harsh sanction as a blanket preclusion of their testimony, Life Tech must make a showing of extreme

8   prejudice resulting from Mann's conduct.  While the Court does not contest that Life Tech incurred

9   some prejudice as a result of Mann's conduct, such prejudice has not been shown to be so great as to

10  warrant such a harsh sanction.  Moreover, it is not clear to the Court how every aspect of the

11  Parkhursts' testimony is now tainted by exposure to five pages of Livak's notebook.  Although Cook

12  seemed excited for Dr. Larry Parkhurst to read the excerpt, it does not follow that exposure to the

13  excerpt taints his entire testimony.  Life Tech has not explained the connection between the contents

14  of the notebook and the Parkhursts' testimony.

15          However, the Court finds it warranted to issue an order precluding the Parkhursts from

16  testifying on the subject of the contents of the patents-in-suit or the contents of the improperly

17  disclosed inventor notebooks.  Dr. Larry Parkhurst's exposure, and any exposure Dr. Laura

18  Parkhurst had to the notebooks, would be remedied by this preclusion.  The Court cannot conclude

19  that Mann's violation of the patent local rule was substantially justified or completely harmless to

20  the extent the Parkhursts testify to the contents of the patents-in-suit or of the notebooks.  *See*

21  *Rooney*, 2011 WL 2149097, at * 3.  The Court accordingly grants the limited sanction stated above.

22                              **iv.     Life Tech's Fees and Costs**

23          Rule 37 and Rule 16(f) require this Court to order an offending to party to pay the reasonable

24  attorney fees and costs caused by its failure unless the failure was substantially justified or other

25  circumstances make an award of expenses unjust.  Fed. R. Civ. P. 37(b)(2)(C); Fed. R. Civ. P.

26  16(f)(2).  Biosearch's contention that a sanction imposing fees and costs are not warranted because it

27

28

United States District Court

For the Northern District of California

1    has not acted in bad faith is contrary to the clear language of the Federal Rules.[9]  Because the Court

2    finds that Mann's unauthorized disclosure was not substantially justified and that an award of fees

3    and costs would not otherwise be unjust, the Court grants Life Tech's request for an award of

4    attorney fees and costs.

5        Life Tech submits declarations and documentation for $23,415.00 in legal fees incurred

6    "investigating the unauthorized disclosure, conferring with Morgan Lewis in attempts to reach an

7    acceptable resolution without court intervention, [taking depositions], and preparing this motion and

8    supporting documents."  Motion at 15.  Life Tech also seeks $3,985.42 in fees for videography and

9    transcripts of the three depositions.  *Id.*

10       The Court ORDERS Life Tech to submit, by **May 4, 2012**, any declarations and billing

11   records not already on file with this Court supporting its request for fees and costs, including fees

12   and costs incurred since filing the Motion.  The Court also ORDERS Biosearch to file, by **May 11,**

13   **2012**, any objections it has to the reasonableness of Life Tech's request for fees and costs.

14   Following these submissions, the Court will issue a separate order on the reasonableness of the fees

15   and costs.

### 2.    Morgan Lewis' Resort to "Self-Help"

17       To the extent Life Tech treats Morgan Lewis' reliance on "self-help" to claw-back the

18   inadvertent disclosure as a separate violation, the Court finds that such "self-help" is not

19   sanctionable under either Rule 37 or the Court's inherent powers.  Regarding Rule 37, Life Tech has

20   not identified an order that was violated by Morgan Lewis' conduct immediately following Morgan

21   Lewis' discovery of the disclosure.  Nor can the Court identify one.  Patent Local Rule 2-2 does not

22   contain a notification provision.  And, of course, the protective order was not entered until nearly 10

23   months after the "self-help" conduct at issue.

24       The Court also finds that Johnson's and Mann's conduct was not a display of bad faith, and

25   therefore sanctions are not warranted under the Court's inherent powers.  Life Tech—asserting that

---

27       [9]  Biosearch's citation to *Hechavarria v. City and County of San Francisco*, 2010 U.S. Dist.
LEXIS 131184 (N.D. Cal. Nov. 30, 2010) is incorrect.  The Court there based its sanctions order solely
28   on its inherent powers.  *Id.* at *8.

United States District Court

For the Northern District of California

1    bad faith is not required—does not make a showing of bad faith. Indeed, it is not questioned that

2    Johnson and Mann took immediate action in attempting to claw-back the notebooks once they

3    learned of the disclosure. Nor is it questioned that Johnson or Mann did not destroy, or direct to be

4    destroyed, copies of the notebooks that contained discoverable information. The fact that Morgan

5    Lewis' investigation into the disclosure was less than complete—e.g., it remained unaware that

6    copies of the notebook had been distributed outside of Biosearch—does not indicate bad faith as

7    much as a lack of thoroughness. Under these circumstances, the Court's exercise of its inherent

8    powers would be inappropriate.

9            **3.    Johnson's and Mann's Failure to Inform Following Entry of the April 6,**

10                **2011 Protective Order**

11        As discussed above, Rule 37 may serve as the basis for sanctions for violation of a protective

12   order. *See* Fed. R. Civ. P. 37(b)(2); *see also Nat'l Med.*, 792 F.2d at 910; *Harmston*, 2007 WL

13   3306526, at *3. Life Tech argues that once the protective order was entered on April 6, 2011,

14   Johnson and Mann were required to notify Life Tech of the disclosure they discovered on June 17,

15   2010. Biosearch contends that since its failure to notify following the entry of the protective order

16   was not done in bad faith, it cannot be held liable for the failure.

17        As a preliminary matter, the Court must decide whether the protective order has any

18   relevance here. Life Tech argues that the order applies to all documents submitted in the case, even

19   those produced before the entry of the order. Biosearch does not directly dispute the order's

20   application to the present dispute, but notes that the inadvertent disclosure occurred nearly a year

21   before the entry of the order, with its notice provision.

22        The Court finds that even though the order may apply retroactively to all documents

23   produced, it does not necessarily apply to disclosures of those documents made prior to the entry of

24   the protective order.[10] The order is silent as to retroactive effect and the language in the order is, at

25   _____

26       [10]   The Court also notes that at least two courts have declined to give a protective order
     retroactive effect to cover documents produced prior to the entry of the order. *See Calderwood, Jr. v.*

27   *Omnisource Corp.*, 2006 WL 1305092, at *1-2 (N.D. Ohio May 10, 2006) (finding that the protective
     order contained no provision allowing retroactive protection of documents produced before the

28   protective order was in place); *Lambright v. Ryan*, 2010 WL 1780878, at *8 (D. Ariz. May 4, 2010)

United States District Court

For the Northern District of California

1  best, ambiguous on the question.  However, Biosearch does not dispute that the order *protects*

2  documents produced prior to April 6, 2011.  Additionally, to the extent Biosearch contests the

3  order's effectiveness regarding its failure to notify Life Tech, the Court cannot conclude that the

4  protective order has retroactive effect over a failure to notify 10 months prior to the order's entry.

5  The Court does conclude, however, that the order can be read to have required notification of the

6  disclosure if Mann or Johnson, or any other attorney subject to the order, knew the disclosure was

7  ongoing as of April 6, 2011.  Cook admits that Biosearch retained PDFs of the notebooks in its

8  employees' email accounts in order to avoid violating the litigation hold.  *See* Opposition at 4 (citing

9  Schmid Decl. Ex. E (Cook Depo.), 28:24 – 29:11).  These copies remained in the employees'

10  possession until at least the employees' December 2011 depositions, when Life Tech demanded they

11  be destroyed.  *Id.*  If Mann or Johnson knew that Biosearch employees possessed copies of the

12  notebooks in their email accounts, beginning April 6, 2011, the protective order required him to

13  notify Life Tech immediately.  *See* Protective Order, Dkt. No. 174, ¶ 3(d) ("In the event of any

14  disclosure . . . of [confidential] material, the Receiving Party responsible for the disclosure shall

15  immediately notify the Designating Party of all the pertinent facts and make every reasonable effort

16  to prevent further unauthorized disclosure, including retrieving all copies of the [confidential]

17  material from the unauthorized recipient(s) . . . ."); *see also Harmston*, 2007 WL 3306526, at *4 ("In

18  determining whether the protective order was violated, the Court will read the order 'in a reasonable

19  and common sense manner.'").

20        However, there is insufficient evidence to conclude that Mann or Johnson knew Biosearch

21  employees retained PDF copies of the notebooks.  Cook's deposition reveals only that *he* ordered

22  Sowers and Beal to destroy any notebook material, except "to leave any e-mail as it was and not to

23  appear to delete relevant e-mails to this action."  Schmid Decl. Ex. E (Cook Depo.), 27:5-12.  There

24  is no indication that this order came from Mann or Johnson, or, moreover, that Mann or Johnson

25

26  ("The Court's protective order, entered on September 23, 2003, does not state that it applied
   retroactively. Thus, the only materials that fall within the scope of the order are those that were
27  disclosed after the order issued on September 23, 2003."); *but see Allen v. City of New York*, 420 F.
   Supp. 2d 295, 300 (S.D.N.Y. 2006) (questioning retroactive effect of protective order but finding that
28  retroactivity was warranted under the particular circumstances of the case).

were aware of it prior to Life Tech's discovery of the disclosure. Their declarations both assert that Cook was told to "destroy all copies of the Notebook, or portions thereof," without qualification. Mann Decl., ¶ 4; Johnson Decl., ¶ 4. They both later confirmed with Cook that "all copies of the notebooks, or portions thereof," were destroyed. *Id.* Without any evidence directly indicating that Mann or Johnson knew of the employees' retention of the emails prior to Life Tech's awareness of the disclosure, the Court cannot conclude that Mann or Johnson violated the protective order. Accordingly, no sanctions are warranted for this alleged violation.

**V.    CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Sanctions is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Dated: May 7, 2012

_____

JOSEPH C. SPERO

United States Magistrate Judge